## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RE: | ) | |
| | ) | **Bankruptcy No. 17-70045-JAD** |
| | ) | |
| **MICHAEL DAVID SCOTT,** | ) | **Chapter 7** |
| Debtor. | ) | |
| ——————————————— | X | |
| | ) | |
| **US BANK NATIONAL** | ) | **Doc. No.** |
| **ASSOCIATION AS TRUSTEE** | ) | |
| **FOR CREDIT SUISSE FIRST** | ) | **Related to Doc. No. 231** |
| **BOSTON MORTGAGE** | ) | |
| **SECURITIES CORP. MORTGAGE** | ) | |
| **BACKED PASS THROUGH** | ) | |
| **CERTIFICATES SERIES 2004-** | ) | |
| **AR-7,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| **MICHAEL DAVID SCOTT, aka** | ) | |
| **THE CRAWFORD GROUP LLC** | ) | |
| **aka MACAUALY FAMILY** | ) | |
| **REALTY TRUST,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |
| ——————————————— | X | |

## ORDER REQUIRING BRIEFING AND CONTINUING HEARING

Movant, US Bank National Association As Trustee For Credit Suisse First
Boston Mortgage Securities Corp. Mortgage Backed Pass Through Certificates
Series 2004-AR-7 (hereafter "US Bank"), requested relief from the automatic
stay "to permit the Movant . . . to foreclose on its mortgage or take any legal or
consensual action, enforcement of its right to possession of, or title to, said
premises [40 Stable Road, Mansfield MA, the "Property"] . . . and to allow the

purchaser of [the Property] at Sheriff's Sale . . . to take any legal or consensual action of enforcement of its right to possession of, title to, [the Property]. *Motion of US Bank National Association As Trustee For Credit Suisse First Boston Mortgage Securities Corp. Mortgage Backed Pass Through Certificates Series 2004-AR-7 for Relief from the Automatic Stay under §362 Pursuant to Bankruptcy Procedure Rule 4001* ("Motion" at ECF No. 106).   The Debtor opposed the Motion, alleging, *inter alia*, that the Movant was not the holder of the Mortgage Note, and therefor did not have standing to foreclose under applicable Massachusetts law.   *Objection to U.S. Bank National Association As Trustee For Credit Suisse First Boston Mortgage Securities Corp. Mortgage Backed Pass Through Certificates Series 2004-AR-7  for Relief from the Automatic Stay* ("Objection" at ECF No. 160).

On June 2, 2017, this Court determined that the Movant presented a colorable claim: a recorded mortgage assignment in its favor, significantly delinquent payments admitted to by the Debtor, an alleged pending foreclosure proceeding in Massachusetts, with the expectation the state court would hold a final adjudication on the merits.   Therefore, the Court entered an Order granting the Motion.  (ECF No. 208).  Thereafter, the Debtor filed an Appeal (ECF No. 227, "Appeal"), as well as a *Motion to Stay Execution of Order Lifting Automatic Stay on 40 Old Stable Drive Mansfield MA 02049 Pending the Outcome of Petitioners Appeal* (ECF No. 231, "Motion to Stay Pending Appeal").

On June 22, 2017, the Massachusetts Land Court, Department of the Trial Court, issued a Memorandum and Order that addresses a foreclosing

lender's right to rely on an assignment of a lost note affidavit to support its right to foreclose.  See Zullo v. HMC Assets, LLC, as Trustee for CAM III Trust, 2017 WL 2720319 (June 22, 2017).  A copy of the Zullo Memorandum Opinion is attached to this Order.

The **Movant and Respondent** are hereby ordered to file legal briefs addressing the applicability of Zullo to the Motion to Stay Pending Appeal – specifically the impact of the Zullo opinion on the "likelihood of the merits" with respect to the appellate issue raised by the Appeal sub judice.

**US Bank shall also** specifically brief its reliance on the 2013 Loan Modification Agreement in support of its standing to foreclose, in light of:  (a) Massachusetts law, ALM GL ch. 244, § 35C, titled "Notice of Foreclosure Prohibited Where Mortgagee Does Not Hold Mortgage Note," and cases decided thereafter, in addition to Zullo; and (b) the fact that the 2013 Loan Modification Agreement was not signed by the Lender.  US Bank shall also specifically brief its reliance on the 2010 Loan Modification Agreement, as approved by the Bankruptcy Court in Massachusetts, in light of the fact that: (a) the Massachusetts Bankruptcy Case was dismissed, without reservation of the effectiveness of the approval of the 2010 Loan Modification Agreement; and (b) the Motion for Relief filed in that court which resulted in the 2013 Loan Modification Agreement included a copy of the Note and did not allege that the Note had been lost.

The Parties and their counsel are reminded of Fed. R. Bankr. P. 9011 and their obligations thereunder, as well as the Pennsylvania Rules of Professional Conduct, Rule 3.3.

The Parties shall file their briefs as required by this Order not later than **August 11, 2017,** and shall contemporaneously serve the other party, and file a certificate of service regarding the same.

**The Hearing on the Motion for Stay Pending Appeal, currently scheduled for July 28, 2017, is cancelled and continued** to **Friday, August 25, 2017 at 10:00 a.m. in Courtroom B, First Floor, Penn Traffic Building, 319 Washington Street, Johnstown, PA 15901.**\* It is further Ordered that the Debtor, Michael David Scott, is permitted to participate in the hearing by telephone. Debtor, or an assigned counselor, is directed to contact Judge Deller's Chambers at 412-644-4701 approximately five (5) minutes prior to the scheduled hearing.

**IT IS SO ORDERED.**

Dated: July 21, 2017                 \_\_/s/ Jeffery A. Deller_____
                                                     Jeffery A. Deller
                                                     Chief U.S. Bankruptcy Judge

\*Video Conferencing equipment has been installed in Courtroom B in Johnstown, PA and in Courtroom D in Pittsburgh PA. Counsel may appear before the Court at either location.

**Attachment**

cc: Case Administrator to Serve:
Michael David Scott
James P Prostko, Esq.
Brett L. Messinger, Esq.
James R. Walsh, Esq.
Office of the United States Trustee

FILED
7/21/17 12:11 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

Zullo v. HMC Assets, LLC for CAM III Trust, Not Reported in N.E.3d (2017)

2017 WL 2720319
Only the Westlaw citation is currently available.
Massachusetts Land Court,
Department of the Trial Court,.
Middlesex County.

John F. ZULLO, Plaintiff,
v.
HMC ASSETS, LLC, as Trustee FOR CAM III
TRUST, Defendant/Third–Party Plaintiff,
v.
DLJ Mortgage Capital, Inc., Third–Party
Defendant

16 MISC 000413 (RBF)
|
Dated: June 22, 2017

MEMORANDUM AND ORDER ON CROSS
MOTIONS FOR SUMMARY JUDGMENT

By the Court (Foster, J.)

**\*1** This latest action between these parties primarily involves the unresolved issue of whether, after the decision in *Eaton v. Federal Nat'l Mtge. Ass'n*, 462 Mass. 569 (2012), a mortgage may be foreclosed upon when the mortgage holder purports to hold the note by assignment of a lost note affidavit. Plaintiff John F. Zullo (Zullo) owns and resides at 51 Claypit Hill Road, registered land in Wayland (Property), and defendant HMC Assets, LLC as Trustee for CAM III Trust (HMC) purportedly holds the mortgage for the Property and the note that the mortgage secures. Zullo brought a complaint against HMC seeking a declaratory judgment pursuant to G. L.c. 231A that HMC lacks authority under G.L.c. 244, § 14, and G.L.c. 183, § 21, to foreclose on the Property. HMC, in turn, brought a third party complaint, naming its purported predecessor in interest DLJ Mortgage Capital, Inc. (DLJ) as third-party defendant, seeking a declaratory judgment that DLJ was entitled to enforce the note when loss of possession occurred and that DLJ effectively transferred its interest and authority to enforce the note to HMC.

HMC has moved for summary judgment on the ground that there are no genuine issues of material fact and that

HMC is entitled to foreclose based on its possession of the lost note affidavit from DLJ's loan servicer and the validity of the assignments of the mortgage. Zullo opposes HMC's motion and also moves for summary judgment, arguing that the lost note affidavit is insufficient to prove HMC holds the promissory note and that mortgage was invalidly assigned to HMC. As explained more thoroughly below, the court finds that HMC cannot hold the note by assignment of a lost note affidavit because it did not have possession of the note when the note was lost. Therefore, HMC does not have the authority to foreclose at this time and Zullo is entitled to summary judgment.

**Procedural History**

On July 25, 2016, Zullo filed a Verified Complaint (Compl.) and Plaintiff's Motion for Temporary Restraining Order, where he moved to enjoin HMC from proceeding with the foreclosure sale of the Property, scheduled for July 27, 2016. On July 25, 2016, a hearing was held on the motion at which counsel agreed to stay the foreclosure sale for one week, to August 3, 2016. On July 26, 2016, HMC filed Defendants' Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order. On August 1, 2016, the Memorandum and Order allowing Motion for Preliminary Injunction was issued. On August 18, 2016, HMC filed its Answer and Third Party Complaint against DLJ. On November 14, 2016, HMC filed its Request for Default pursuant to Mass. R. Civ. P. 55(a) on Defendant DLJ and DLJ was defaulted.

Also on November 14, 2016, HMC filed its Motion for Summary Judgment with Memorandum of Law in Support, Statement of Material Facts (SOF), and Appendix of Exhibits and Legal Authorities (App. Exh.). On November 25, 2016, HMC filed its Request for Judgment by Default against Third Party Defendant DLJ. On December 19, 2016, Zullo filed his Opposition to HMC's Motion for Summary Judgment, Response to HMC's Statement of Material Facts, and Affidavit of Zullo (Zullo Aff.). On December 28, 2016, HMC's Reply to Zullo's Opposition to its Motion for Summary Judgment, Motion to Vacate Entry of Default and to Endorse Agreement for Judgment, and Agreement for Judgment by and between HMC and DLJ were filed. On January 4, 2017, a hearing on HMC's Motion for Summary Judgment was held. At the hearing the Motion for Summary Judgment was taken under advisement and the default against DLJ was removed and the Agreement

for Judgment was also taken under advisement.

## Summary Judgment Standard

**\*2** Generally, summary judgment may be entered if the "pleadings, depositions, answers to interrogatories, and responses to requests for admission ... together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mass. R. Civ. P. 56(c). In viewing the factual record presented as part of the motion, the court draws "all logically permissible inferences" from the facts in favor of the non-moving party. *Willitts v. Roman Catholic Archbishop of Boston*, 411 Mass. 202, 203 (1991). "Summary judgment is appropriate when, 'viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.' " *Regis College v. Town of Weston*, 462 Mass. 280, 284 (2012), quoting *Augat, Inc. v. Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991).

## Undisputed Facts

Based on the pleadings and the documents submitted with the motion for summary judgment and opposition, as well as facts found by this court in related prior litigation between the parties, the following facts are undisputed or deemed admitted:

1. Zullo is the record owner of property located at 51 Claypit Hill Road in Wayland (Property) pursuant to a deed executed on March 24, 2006, registered as Document No. 1406918, evidenced by certificate of title number 236444, Book 1317, Page 140, issued by the Middlesex (South) County Registry District (registry). Zullo Aff. ¶ 1; App. Exh. 2.

2. On February 20, 2007, Zullo executed and delivered a promissory note, in the amount of $1,088,000.00 (Note), to Lime Financial Services, LTD (Lime), in exchange for a loan of that amount (Loan). SOF ¶ 1; App. Exh. 1.

3. As security for the Note, Zullo gave a mortgage on the Property to Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Lime, dated February 20, 2007, and noted as Document No. 1438078, on said certificate on February 28, 2007 (Mortgage). SOF ¶ 2; App. Exh. 2.

4. The Note, Mortgage, and Loan were serviced by Select Portfolio Services (SPS) on behalf of Lime, and later by Selene Finance, LP (Selene). SOF ¶ 3; App. Exh. 6.

5. In May, 2008, Zullo defaulted on his loan obligation. In response to Zullo's default, SPS sent Zullo a 90–day demand letter dated July 3, 2008. Compl., Exh. E.

6. On August 22, 2008, the Mortgage was first assigned from MERS, as nominee for Lime, to DLJ Mortgage Capital, Inc. (DLJ), by an assignment noted as Document No. 1487689 on said certificate on December 4, 2008 (First Assignment). SOF ¶ 4; App. Exh. 3.

7. Following the First Assignment, SPS continued servicing the loan on behalf of DLJ. SOF ¶ 6; App. Exhs. 4, 6.

8. SPS held the Note in its capacity as servicer for the benefit of DLJ, who was the Note's holder in due course with authority to enforce it. SOF ¶ 8; App. Exhs. 4, 6.

9. On November 19, 2008, DLJ filed a Complaint to satisfy the Servicemembers Civil Relief Act (SCRA) with the Land Court. On May 27, 2009, the Land Court issued judgment that Zullo was not entitled to the benefits of the SCRA.

10. On January 4, 2011, Zullo filed a Complaint and Motion for Temporary Restraining Order with the Middlesex Superior Court against DLJ and other defendants, docketed as Civil Action MICV2011–00022 (Superior Court Action). On January 4, 2011, the Superior Court granted the Motion for Temporary Restraining Order, enjoining a foreclosure sale scheduled for January 6, 2011. Compl., Exh. F.

11. In February 2011, in the process of transferring the original Note from SPS to Selene, the original Note was lost. It cannot be located. SOF ¶ 9; App. Exh. 4.

12. On March 18, 2011, the Superior Court vacated the Motion for Preliminary Injunction and the Temporary Restraining Order, and dismissed the Superior Court Action, entering judgment in favor of DLJ and the other defendants. In the March 2011 Order, the Superior Court (Smith, J.) found that "the plaintiff failed to show a likelihood of success on the merits where he admits to owing all the money due on the mortgage, that he received actual notice of the foreclosure sale some 17 days before the scheduled sale and where his claims about his name and his ignorance of who holds his mortgage are both wholly without merit and frivolous and advanced in

bad faith, all of which reasons the defendants have clearly articulated in their opposition and which this court adopts in its entirety." Compl., Exh. F.

*3 13. On June 8, 2011, Zullo filed a Chapter 13 bankruptcy petition in the Bankruptcy Court. On June 21, 2011, the Bankruptcy Court issued an Order dismissing that case because Zullo had failed to file the creditor matrix by the due date of June 15, 2011. On August 16, 2011, Zullo filed a second Chapter 13 bankruptcy petition (Bankruptcy Action). On October 12, 2011, Zullo's Bankruptcy Action was converted from a Chapter 13 to a Chapter 11 petition. Compl., Exh. H.

14. On or about October 3, 2011, servicing of the loan was transferred from SPS to Selene. SOF ¶ 11; App. Exh. 4.

15. On or about December 21, 2011, DLJ purportedly transferred all of its interest in the Note to HMC, which took possession and control of the loan collateral file. SOF ¶ 12; Exhs. 6–7.

16. On or about January 12, 2012, servicing of the loan was transferred from Selene to BSI Financial Services, Inc. (BSI). App. Exh. 6.

17. On January 20, 2012, the Vice President of SPS, as the former servicing agent for DLJ, executed a Lost Note Affidavit with respect to the lost original Note and attached a copy of the Note to the affidavit. SOF ¶ 10; App. Exhs. 4, 6.

18. On January 31, 2012, DLJ executed an assignment of the Mortgage to HMC, noted as Document No. 1803914 on said certificate on June 14, 2012 (Second Assignment). The Second Assignments purports to assign the Mortgage to HMC "[t]ogether with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Document." SOF ¶ 14; App. Exhs. 5–6.

19. On August 29, 2012, HMC filed a Motion for Relief in the Bankruptcy Action. On September 7, 2012, in connection with an evidentiary hearing scheduled for December 11, 2012 on HMC's Motion for Relief, the Bankruptcy Court issued an Order stating that Zullo was "to make adequate protection payments in the amount of $4,000 commencing on September 17, 2012 and every 30 days thereafter until further order of the Court. These payments shall be delivered to the office of counsel for creditor HMC Assets LLC. As further adequate protection, the debtor shall provide to creditor HMC Assets LLC evidence that the property is insured, such

notice to be delivered to counsel for creditor on or before September 17, 2012." Compl., Exh. I.

20. On October 30, 2012, HMC filed an Affidavit of Non–Compliance in response to Zullo's failure to comply with the Bankruptcy Court's September 7, 2012 Order. On November 7, 2012, the Bankruptcy Court granted HMC's Motion for Relief. Upon retaining relief from the automatic stay, HMC resumed its collection activities with respect to the Loan. Compl., Exh. I.

21. On February 19, 2013, Zullo filed a Subsequent Petition to Amend Certificate of Title in the Land Court, docketed as case no. 13 SBQ 39742 02–001 (Land Court Action), where he alleged that HMC did not hold the mortgage based on two invalid assignments. Compl., Exh. M.

22. On October 16, 2013, HMC, through its servicing agent BSI, sent Zullo a 150–day Notice of Right to Cure and Right to Request a Modified Loan notice. App. Exh. 6; Compl., Exh. N.

23. HMC filed a Motion for Summary Judgment in the Land Court Action, arguments for which were heard on November 27, 2013, and after which the motion was taken under advisement. After receiving a notice of sale on June 4, 2014 (Notice of Sale), Zullo filed a Motion for Preliminary Injunction and a Motion for Lis Pendens on June 20, 2014. At the hearing on the motions for a preliminary injunction and lis pendens, the court ordered the date of the sale be postponed two months, so long as Zullo complied with various conditions. Compl., Exh. M.

*4 24. On August 27, 2014, the court in the Land Court Action allowed HMC's Motion for Summary Judgment, finding (1) that Zullo was barred from challenging the Mortgage and its First Assignment under the doctrine of res judicata based on the earlier Superior Court Action, (2) claim preclusion did not bar Zullo from raising claims based on the Second Assignment, and (3) on the merits, Zullo had failed to plead the invalidity of the Second Assignment. Compl., Exhs. M, O; see *Zullo v. HMC Assets, LLC*, 22 LCR 391, 393–395 (2014).

25. In that Order in the Land Court Action, the court expressed its views on whether possession of the Mortgage and the Lost Note Affidavit gave HMC authority to foreclose on Zullo's equitable right of redemption by exercise of the statutory power of sale. In its discussion, the court noted that "an assignment of a mortgage and lost note affidavit, from a party entitled to enforce the note, constitutes authority to act on behalf of the note holder under *Eaton v. Federal Nat'l Mtge. Ass'n*,

462 Mass. 569, 571 (2012)." Based on the foregoing, the court dismissed Zullo's petition. Compl., Exh. O; see *Zullo*, 22 LCR, at 395–396.

26. On September 25, 2014, Zullo filed an appeal of the decision of the Land Court Action. On December 30, 2015, the Massachusetts Appeals Court issued a Memorandum and Order pursuant to Rule 1: 28, affirming the Land Court's judgment in dismissing the petition, but disagreeing with the judge's comments regarding whether HMC was in a position to satisfy the rule from *Eaton*. The Appeals Court found that the "*Eaton* issues fall outside the narrow scope of Zullo's petition," which only dealt with whether HMC held a valid mortgage on the Property. The court stated:

> Because the *Eaton* issues were not resolved by the judgment, we do not address them on appeal. Therefore, we do not consider the judge's discussion of how *Eaton* applies in circumstances where, as here, the current holder of the note apparently cannot be ascertained (the note allegedly having been lost or destroyed). We note that deferring consideration of how an entity in HMC's position can satisfy *Eaton* will allow such issues to be reviewed on a more fully developed trial court record.

Compl., Exhs. M, P, R; see *Zullo v. HMC Assets, LLC*, No. 14–P–1696, 2015 WL 9488393, at * 1–2 (Mass. App. Ct. Dec. 30, 2015) (Appeals Court Decision).

27. On January 15, 2016, Zullo filed a petition for Further Appellate Review, which was denied on March 31, 2016.

28. On July 25, 2016, Zullo filed his Verified Complaint in this action, seeking a declaratory judgment that HMC lacks authority to foreclose the Property based on its failure to comply with *Eaton*.

29. The Note and Loan have not been forgiven, discharged, satisfied, cancelled, charged off, paid in full or transferred, assigned or endorsed to any other individual or entity. SOF ¶ 17; App. Exh. 7.

## Discussion

The two issues raised by Zullo in this action are whether

HMC has standing to foreclose based on the Lost Note Affidavit from its predecessor, DLJ, and whether the First Assignment—the assignment of the Mortgage from MERS to DLJ—was valid. Zullo argues that HMC does not have the authority to exercise the statutory power of sale under G.L.c. 244, § 14, through the utilization of the Lost Note Affidavit. Zullo also challenges the validity of the assignments of the Mortgage to HMC and HMC's ability to exercise the power of sale based on those assignments. Conversely, HMC asserts that it has the authority to foreclose based on its ownership of the Mortgage and that either it is the owner of the Note or has the authorization to act on behalf of the noteholder under *Eaton* pursuant to the Lost Note Affidavit. In addition, HMC maintains that the assignment from MERS to DLJ was valid since MERS has the ability to hold and assign mortgages as nominee for lenders. Each of these arguments is addressed below in turn.

### A. The Lost Note Affidavit

**\*5** Under the holding of *Eaton v. Federal Nat'l Mtge. Ass'n*, the statutory power of sale can only be exercised by a "person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder." *Eaton*, 462 Mass. at 571. The holding of *Eaton* was given prospective effect, applying to cases where the notice of sale was issued after June 22, 2012. The Notice of Sale came well after that date, on June 4, 2014, making *Eaton* applicable to this action.

Zullo argues that HMC cannot foreclose because it has failed to make any proffer that it is in current possession of the original Note, let alone at the time of the publication of the foreclosure sale, or that it has authority to act on behalf of the note holder under *Eaton*. It is undisputed that the original Note is lost and cannot be produced by HMC. Instead, HMC seeks to foreclose on the Mortgage under *Eaton* through use of the Lost Note Affidavit, executed on January 20, 2012 by SPS, as servicing agent for DLJ. HMC contends that the original Note was lost at some point when it was being transferred from SPS to Selene in February 2011. The Lost Note Affidavit was executed by the Vice President of SPS on behalf of DLJ and states that SPS serviced the Mortgage and Note for DLJ until approximately October 3, 2011, at which time servicing was transferred to Selene. HMC states that it became the owner of Zullo's Mortgage and the loan collateral file on December 21, 2011, and the loan collateral file contained the Lost Note Affidavit. The Second Assignment purports to assign the Mortgage from DLJ to HMC "[t]ogether with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to

accrue under said Document."

Zullo contests HMC's ability to rely on the Lost Note Affidavit as sufficient evidence to show possession of the Note or authority to act on behalf of the note holder. Zullo reasons that the Lost Note Affidavit is a negotiable instrument that fails to satisfy G.L.c. 106, § 3, which requires the production of the original instrument. A threshold determination is whether the Note was a negotiable instrument. The Note which contains Zullo's unconditional promise to pay a certain amount to Lime. This makes the Note a negotiable instrument which, under G.L.c. 106, § 3–301, can be enforced only by the holder of the original instrument or a person entitled to enforce under G.L.c. 106, § 3–309. The effect of the Lost Note Affidavit is therefore governed by § 3–309. That section provides the only exception to § 3–301's requirement that the original instrument be produced in order to enforce it. Section 3–309 states:

(a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, section 3–308 applies to the case as if the person seeking enforcement had produced the instrument....

*6 Zullo argues that the "person not in possession of an instrument ... entitled to enforce the instrument" must be the same "person ... in possession of the instrument and entitled to enforce it when the loss of possession occurred." *Id.* HMC was not in possession of the original Note when it was lost; rather, SPS, as servicer for DLJ, had possession at that time. Therefore, Zullo submits, HMC cannot now seek to use § 3–309 to enforce the lost instrument through the Lost Note Affidavit. HMC urges this court to give a more liberal interpretation to § 3–309 and find that the person in possession of a promissory note and entitled to enforce it when the loss occurred can assign that right to another, via a lost note affidavit, who is then entitled to enforce the note. A determination of the meaning of the statute requires further analysis.

The language of G.L.c. 106, § 3–309, is that of the 1990 version of § 3–309 in Article 3 of the Uniform Commercial Code (UCC). The requirement of who had to have possession of the negotiable instrument at the time of the loss presented difficulties in many cases where an instrument was lost prior to an assignment so that the assignor never had actual possession of the original note. *Dennis Joslin Co., LLC v. Robinson Broad. Corp.*, 977 F. Supp. 491 (D.D.C. 1997), was a seminal case discussing the applicability of this provision of the UCC under these circumstances. In *Joslin*, the U.S. District Court for the District of Columbia applied the language of the UCC, as adopted by the District of Columbia, literally. The case involved an unpaid note executed by Robinson Broadcasting Corporation in exchange for a loan from Madison National Bank (Madison). *Id.* at 492. The note was subsequently acquired by the Federal Deposit Insurance Corporation (FDIC) when it became receiver for Madison. The FDIC subsequently lost the original note and then purportedly sold the note to 4M Communications by issuing a lost note affidavit. *Id.* 4M Communications similarly conveyed its interest in the note, via an assignment of promissory note, to the Dennis Joslin Corporation (Joslin), which attempted to enforce it under § 3–309 of the D.C. statute. *Id.* Joslin conceded that it was not currently in possession of the note and the note was lost while the FDIC was in possession. The court reasoned that "the plain language of the provision mandates that the plaintiff suing on the note must meet two tests, not just one: it must have been *both* in possession of the note when it was lost and entitled to enforce the note when it was lost." *Id.* at 495. Because Joslin did not have possession of the original note at the time it was lost, the court precluded Joslin from enforcing it. *Id.*

The decision in *Joslin* caused a split in many state and federal courts over the interpretation of this provision of the UCC and state statutes that had adopted the same language. Some courts followed the holding in *Joslin*. See *In re Dudley*, 502 B.R. 259, 275–276 (Bankr. W.D. Va. 2013); *Kemp v. Countrywide Home Loans, Inc.*, 440 B.R. 624, 632–633 (Bankr. D.N.J. 2010); *Cadle Co. of Connecticut, Inc. v. Messick*, 30 Conn. L. Rptr. 21 (Conn. Super. Ct. 2001) (assignee of lost instrument was required to have had possession of the note under 3–309); *State Street Bank and Trust Co. v. Lord*, 851 So. 2d 790, 791–792 (Fla. 4th DCA 2003) (assignee of note and mortgage may not foreclose mortgage where note was lost before it was assigned, and the assignor also never had possession of the note). Other courts disagreed with *Joslin's* holding and declined to follow it. See *Caddo Parish–Villas S., Ltd. v. Beal Bank, S.S.B.*, 250 F.3d 300,

301–302 (5th Cir. 2001); *Southeast Investments, Inc. v. Clade*, 40 U.C.C. Rep. Serv. 2d 255 (N.D. Tex. 1999), *aff'd*, 212 F.3d 595 (5th Cir. 2000) (plaintiff had right to enforce lost note when FDIC had assigned its rights under the lost note to the plaintiff); *Beal Bank, SSB v. Caddo Parish–Villas South, Ltd.*, 218 B.R. 851, 854 (N.D. Tex. 1998) (finding there is nothing in the language of 3–309(a) or the legislative history to indicate that a person entitled to enforce a negotiable instrument under 3–309 cannot assign these rights to another party); *NAB Asset Venture II v. Lenertz, Inc.*, 36 U.C.C. Rep. Serv. 2d 474 (Minn. Ct. App. 1998) (the buyer entitled to enforce the note and guarantee under 3–309 because the assignor was entitled to enforce the note when in its possession and assignee takes the position of the assignor); *YYY Corp. v. Gazda*, 145 N.H. 53, 60–61 (N.H. 2000); *Bobby D. Assoc. v. DiMarcantonio*, 751 A.2d 673, 676 (Pa. Super. Ct. 2000) (Section 3–309 does not prohibit a lost note from being transferred, noting the Pennsylvania equivalent of § 3–203 permits a transferee of an instrument to obtain any right of the transferor to enforce the instrument).

**\*7** To resolve this dispute, § 3–309 of the UCC was amended in 2002 to omit the possession requirement and to require only an entitlement to enforce the instrument when the instrument was lost or the acquisition of ownership from a person who was so entitled, either directly or indirectly. The 2002 revision of § 3–309 states in part:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if: (1) The person seeking to enforce the instrument (A) was entitled to enforce the instrument when loss of possession occurred, or (B) has directly or indirectly acquire ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;

Eighteen states and the District of Columbia have adopted the 2002 amendment to the UCC, thereby eliminating the possession requirement under § 3–309.[1] Massachusetts, however, is one of the many states that has yet to adopt the UCC amendment in its own statute. In *Marks v. Braunstein*, 439 B.R. 248 (D. Mass. 2010), the U.S. District Court for the District of Massachusetts applied the *Joslin* court's reasoning to the Massachusetts statute, holding that the party seeking to enforce a note did not meet the prerequisites of § 3–309 because he offered no proof that he ever possessed the note. *Id.* at 250–251. The

District Court cited to an illustration from a White & Summers treatise to clarify the possession requirement of § 3–309:

> [A] payee who receives a check in payment for services and then loses the check while walking home can still enforce the instrument. Similarly, if the payee was the victim of a mugging on the way home, and the thief made off with the payee's wallet containing the check, the payee remains entitled to enforce the instrument.

> If, on the other hand, the drawer had entrusted a messenger with delivery of the check to the payee, and the messenger instead chose to flee to Jamaica with the check, the payee would not be able to enforce the instrument because the payee would not have had possession at the time of the loss.

*Id.*, citing 2 White & Summers, *Uniform Commercial Code* § 18–2 (5th ed. 2009). The court noted that "[t]he purpose of the possession requirement in Article 3 is to protect the Debtor from multiple enforcement claims to the same note." *Id.*, citing *In re Gavin*, 319 B.R. 27, 33 (1st Cir. 2004).

The district court's holding in *Marks v. Braunstein*, interpreting § 3–309 to mean that a mortgage note that was lost or destroyed prior to its assignment cannot be enforced by someone who was not in actual possession of the original note at the time the note was lost, has been followed by other decisions of the District of Massachusetts and the U.S. Bankruptcy Court of the District of Massachusetts. See *Deutsche Bank Nat'l Trust v. Moynihan*, No. CV 15–14155–MBB, 2016 WL 4098579, at \*11 (D. Mass. July 28, 2016) (finding that the plain language of § 3–309 requires actual possession of the instrument when loss of possession occurred); *In re Harborhouse of Gloucester, LLC*, 505 B.R. 365, 372 (Bankr. D. Mass. 2014), *aff'd* 523 B.R. 749 (B.A.P. 1st Cir. 2014) (under Massachusetts law there is a requirement of actual possession of the negotiable instrument at the time of loss in order for a party to enforce the instrument). In essence, the current standard in federal courts applying Massachusetts law is that possession of the original note at the time it was lost is required for enforcement, and a downstream assignee or transferee cannot enforce the note if it was not in possession of the note and entitled to enforce it at the time the note was lost.

**\*8** As far as this court can tell, this is an issue of first impression in Massachusetts state courts. There is no state court precedent that deals with the issue of enforceability of a lost promissory note by an assignee of a lost note affidavit. While this court is not bound to follow the

Zullo v. HMC Assets, LLC for CAM III Trust, Not Reported in N.E.3d (2017)

decisions of the federal courts and bankruptcy courts of the District of Massachusetts, it sees no rationale to depart from their interpretation of § 3–309. Though the possession requirement has been eliminated in several jurisdictions since the 2002 revision to Article 3 of the UCC, the Massachusetts legislature has declined to do so. Until such time, the plain language of § 3–309 continues to compel the person attempting to enforce a lost note to have been in possession of the note when it was lost.

In attempting to convince this court that § 3–309 should be given an alternate reading, HMC cites to several cases from jurisdictions rejecting the *Joslin* reasoning that possession of the note at the time of its loss is not necessary and the rights to enforce a lost note may be assigned. In reaching this conclusion, those courts reasoned that § 3–309 was silent on this issue and, thus, they relied on other legal principles of assignment outside of Article 3, including state common law and the law controlling transfers of assets by the FDIC. See *Caddo Parish–Villas S., Ltd.*, 250 F.3d at 302 (applying Louisiana common law of assignments in absence of specific provision in § 3–309 dealing with assignment of lost note to hold rights under note may be validly assigned); *Allen v. U.S. Bank Nat'l Ass'n*, 472 B.R. 559, 566–567 (B.A.P. 9th Cir. 2012) (relying on cases invoking common law of assignments to hold that lost note affidavit with endorsement in blank sufficient to replace the original lost promissory note); *Beal Bank, SSB*, 218 B.R. at 855 (finding that under Louisiana general assignment law, assignee of lose note is entitled to enforceability); *Atlantic Nat'l Trust, LLC v. McNamee*, 984 So.2d 375, 377–378 (Ala. 2007) (finding § 3–309 is silent with regard to assignability of lost note and Alabama's common-law assignment principles permit the assignment of that enforcement right); *Fales v. Norine*, 263 Neb. 932, 940 (Neb. 2002) (relying on probate law about succession to hold that a personal representative of decedent may enforce a lost note made payable to the decedent after his or her death); *YYY Corp.*, 145 N.H. at 61 (holding that neither the plain language nor official comment to § 3–309 supports a determination that a person entitled to enforce a negotiable instrument cannot assign that right or that the intent behind § 3–309 was to displace the common law of assignments, therefore, the owner of a promissory note who lost it could subsequently transfer their interest in the note); *JP Morgan Chase Bank, N.A. v. Stehrenberger*, No. 70295–6–I, 2014 WL 1711765 at *3 (Wash. App. April 28, 2014) (finding that nothing in § 3–309 prohibits a lost, destroyed, or stolen instrument from being transferred by FDIC and purchase of all assets acquired the rights that came along with them).

In Massachusetts, however, the statute governing negotiable instruments "is decisive as to all matters comprehended with in its terms." *Union Trust Co. v. McGinty*, 212 Mass. 205, 206 (1912). Thus, "where Article 3 specifically governs a situation, it trumps any common law default rule." *Marks*, 439 B.R. at 251–252, citing *Union Trust Co*, 212 Mass. at 206. The Bankruptcy Court in *Harborhouse* specifically found, and this court agrees with such finding, that Article 3 does address the enforceability of a lost note, and the terms of a lost note's enforceability are specifically set forth in § 3–309. *In re Harborhouse of Gloucester*, 505 B.R. at 371–372. In interpreting whether enforcement rights to the Note may be transferred from DLJ to HMC through the Lost Note Affidavit, the specific language of Article 3 dictates the ability of DLJ to use the Lost Note Affidavit to assign the Note. Common law principles of assignability are not taken into consideration. Because possession is a key requirement of enforceability, § 3–309 specifically prohibited DLJ to use the Lost Note Affidavit to effect such a transfer of rights.

**\*9** HMC argues that the possession requirement should not be strictly construed because it is unlikely there will be multiple parties seeking to enforce the Note. Ultimately, the only two entities likely to claim any interest in the Note are HMC and DLJ. HMC argues that DLJ's silence in this case and eventual default demonstrate a complete lack of interest in expending time and resources defending an action involving a note that it no longer holds. HMC submits that the Lost Note Affidavit combined with the request for default against DLJ affirmatively demonstrates to the court that HMC is the holder of the Note with authority to enforce it and foreclose. This argument is unconvincing. Although conflicting enforcement claims may not be of concern in this particular action, the statute's requirements still apply. See *Marks*, 439 B.R. at 251. "Actual possession at the time of loss as a requirement of enforcement of a negotiable instrument under § 3–309 provides an objective method to determine a party's right to enforce a negotiable instrument and provides a reliable means to determine the parties' rights. By setting an actual possession requirement, parties on both sides have a clear and established standard. The maker of the note is protected from multiple claims of its ownership and enforcement of the note is still possible by the party who lost it." *In re Harborhouse of Gloucester*, 505 B.R. at 372.

Neither has HMC shown that it is acting on behalf of the note holder who was in possession of the Note at the time it was lost. HMC has presented no evidence that DLJ ever authorized HMC to act on its behalf in enforcing the

Note. The Lost Note Affidavit does not, and cannot, establish that HMC is undertaking any action on behalf of DLJ as the note holder. Likewise, the proposed Agreement for Judgment between HMC and DLJ is not evidence that HMC has the legal authority to stand in the shoes of DLJ in order to foreclose. In the Agreement for Judgment, HMC states that "DLJ intended to, and did, transfer all of its interest in the Promissory Note to HMC" and that HMC is the "Note's holder in due course with authority to enforce it pursuant to its terms." While DLJ may well have intended to transfer the Note through the Lost Note Affidavit, § 3–309 makes that Affidavit, standing alone, insufficient to legally assign the right to enforce the Note. There is no other evidence in the record to demonstrate that DLJ did in fact authorize HMC to act on its behalf and HMC's conclusory statements in the Agreement for Judgment are inadequate to prove such an authorization did occur. Further, HMC cannot rely on the assignment of the Mortgage to establish its standing to enforce the lost promissory Note secured by the Mortgage. See *Marks*, 439 B.R. at 251–252 (recorded assignment of mortgage was not sufficient to establish assignee's standing to enforce lost promissory note).

HMC urges this court to consider the "overwhelming chilling effect" this decision would have on the marketability of negotiable instruments if it decides to follow the decisions of the federal courts in the Commonwealth. HMC asserts that such a position fails to take into account instances where a negotiable instrument is lost and its holder subsequently enters bankruptcy, goes out of business, or dies. The unavailability of the instrument holder in such cases should not result in the loss of the instrument's interest. In the present action, HMC argues this outcome would result in an enormous windfall to Zullo by relieving him of the debt he was obligated to pay. What HMC fails to acknowledge, however, is the "windfall" that it would achieve if the court were to allow an entity without a perfected security instrument to foreclose and claim the right, title, and interest in real property of another. Accordingly, without having actual possession of the Note or demonstrating that it is acting on behalf of the note holder, HMC fails to satisfy the requirements of *Eaton* and lacks standing to foreclose. *Eaton*, 462 Mass. at 571.[2]

B. Assignments of the Mortgage

**\*10** Having found that HMC cannot enforce the Note and, therefore, cannot foreclose on the Property, the validity of the assignments of the Mortgage to HMC need not be decided. In the interest of completeness, the issue is nonetheless addressed here. Only a present holder of a mortgage with the legal authority to exercise the power of

sale under G.L.c. 183, § 21, and G.L.c. 244, § 14, is authorized to foreclose on the mortgaged property. HMC is not the original mortgagee to whom the power of sale was granted. The purported authority of HMC to foreclose derives from two assignments of Zullo's Mortgage. The First Assignment is from MERS, as nominee for Lime, to DLJ, and the Second Assignment is from DLJ to HMC. Zullo argues that the first assignment from MERS to DLJ is void because MERS was not a "mortgagee" under *Eaton* and as nominee for the lender was without authority to assign the mortgage. The short answer to Zullo's claim is that the Superior Court Action Decision have foreclosed this argument. The longer answer is that these allegations and the evidence supporting them recede in the face of established Massachusetts law.

"[N]othing in Massachusetts law requires a foreclosing mortgagee to demonstrate that prior holders of the record legal interest in the mortgage also held the note at the time each assigned its interest in the mortgage to the next holder in the chain." *Sullivan v. Kondaur Capital Corp.*, 85 Mass. App. Ct. 202, 210 (2014). "[I]n Massachusetts a mortgage and the underlying note can be split," so long as the mortgage and the note are united under the same control at the time of foreclosure. *Eaton*, 462 Mass. at 568–569. Courts have consistently held that "[i]n Massachusetts, MERS generally may assign mortgages for which MERS is the mortgagee, as holder of legal title, and may do so despite not holding the note." *Mitchell v. U.S. Bank Nat'l Ass'n*, 22 LCR 120, 128 (2014), citing *Abate v. Fremont Inv. & Loan*, 20 LCR 630, 635 (2012), *aff'd* 470 Mass. 821 (2015); *Deutsche Bank Nat'l Trust Co. v. Cicchelli*, 19 LCR 461, 463 (2011); *Kiah v. Aurora Loan Services, LLC*, No. 10–40161-FDS, 2011 WL 841282 at \*8 (D. Mass. Mar. 4, 2011); *In re Lopez*, 446 B.R. 12, 18–19 (Bankr. D. Mass. 2011). Therefore, even if MERS did not hold the Note at the time of the assignment, that does not prevent it from being a "mortgagee" with the right to transfer the Mortgage on behalf of the lender.

Moreover, Massachusetts courts have found that MERS may hold and assign mortgages. *Shea v. Federal Nat'l Mtge. Ass'n*, 87 Mass. App. Ct. 901, 902–903 (2015); *Haskins v. Deutsche Bank Nat'l Trust Co.*, 86 Mass. App. Ct. 632, 642 (2014); *Sullivan*, 85 Mass. App. Ct. at 208–210; see *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 293 (1st Cir. 2013) ("MERS's role as mortgagee of record and custodian of the bare legal interest as nominee for the member-noteholder, and the member-noteholder's role as owner of the beneficial interest in the loan, fit comfortably with each other and fit comfortably within the structure of Massachusetts

mortgage law.").[3] Notwithstanding Zullo's interpretation of its intended function, MERS's authority as mortgagee in possession of legal title to the Property was valid and enforceable. Just as state law explicitly supports MERS's right to legal title of a mortgage, it supports its independent right to assign a mortgage if granted that power in the mortgage documents. See *Sullivan*, 85 Mass. App. Ct. at 209–10 ("MERS had the authority to assign the Mortgage without identifying its principal or further demonstrating its authority."); *Mitchell*, 22 LCR at 128. Zullo's argument that the authority to assign the Mortgage is somehow different when dealing with registered land post-*Eaton* is unfounded. Several decisions after *Eaton* have explicitly dealt with registered land and upheld the assignment of a mortgage by MERS as nominee, as the Appeals Court Decision recognized. See *Sullivan*, 85 Mass. App. Ct. at 203, 209–10; *Pappas v. Deutsche Bank Nat'l Trust Co.*, 24 LCR 221, 222 (2016); *Hendricks v. Federal Nat'l Mortgage Ass'n*, 22 LCR 184, 185–186 n.1 (2014), *aff'd*, 89 Mass. App. Ct. 1112 (2016).

*11 The Mortgage specifically defines Lime as the Lender and MERS as a "separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument." App. Exh. 2. The Mortgage states that Zullo "does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale," the Property. App. Exh. 2. It further states that Zullo "understands and agrees that MERS holds only legal title to the interests granted by [Zullo] in this Security Instrument, but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." App. Exh. 2.

"As it did in *Abate*, MERS had authority to assign the Mortgage, with or without the demonstration of its principal's assent." *Mitchell*, 22 LCR at 128, citing *Abate*, 20 LCR at 635; *Deutsche Bank Nat'l Trust Co. v. Butler*, 20 LCR 147, 147–148 (2011). By the express terms of the Mortgage, MERS was acting on behalf of the lender, Lime, in executing the First Assignment and was well within its authority to do so as nominee for the lender. See *id.*, citing *Cicchelli*, 19 LCR at 463. Applying Massachusetts law to the facts of this case, MERS acted completely within its authority, as mortgagee and nominee for Lime, when it assigned the Mortgage to DLJ, and DLJ validly held the Mortgage when it assigned it to HMC. Though HMC is the holder of the Mortgage by assignment, it is not an entity with standing to foreclose the Mortgage since, as previously held, it is not the holder of the Note or acting on behalf of the Note holder.

## CONCLUSION

For the foregoing reasons, HMC's Motion for Summary Judgment is DENIED and Zullo's Motion for Summary Judgment is ALLOWED. Judgment shall enter declaring that, as of the date of the Notice of Sale, HMC held the Mortgage but did not hold the Note and did not act on behalf of the holder of the Note. The Third Party Complaint is DISMISSED WITHOUT PREJUDICE.

**SO ORDERED.**

**All Citations**

Not Reported in N.E.3d, 2017 WL 2720319

## Footnotes

1    Alabama, Arkansas, District of Columbia, Florida, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, Ohio, Oklahoma, South Carolina, Tennessee, and Texas have substantially adopted the language of the revised § 3–309.

2    The court recognizes that it reached a different conclusion in the prior Land Court Action, *Zullo v. HMC Assets, LLC*, 22 LCR 391 (2014), one that the Appeals Court concluded should not have been reached at that stage. *Zullo*, 2015 WL 9488393, at * 1–2. The question is now joined in this case, and, upon further consideration, the court reaches the conclusion set forth here.

3    In addition to the Appeals Court Decision, multiple federal court, unpublished Appeals Court, and Massachusetts trial court decisions have reached the same conclusion. See *Galvin v. U.S. Bank, N.A.*, 852 F.3d 146 (1st Cir. 2017); *Dyer v. Wells Fargo Bank, N.A.*, 841 F.3d 550, 553 (1st Cir. 2016); *Mills v. U.S. Bank, NA*, 753 F.3d 47, 50 (1st Cir. 2014); *Butler v. Deutsche Bank Trust Co. Americas*, 748 F.3d 28, 32 (1st Cir. 2014); *Woods v. Wells Fargo Bank, N.A.*, 733

Zullo v. HMC Assets, LLC for CAM III Trust, Not Reported in N.E.3d (2017)

F.3d 349, 355 (1st Cir. 2013); *Davis v. Deutsche Bank Nat'l Trust Co.,* No. CV 12–11738–JCB, 2015 WL 12778369, at *7 (D. Mass. Aug. 4, 2015); *In re Danastorg,* 499 B.R. 8, 17–19 (Bankr. D. Mass. 2013); *Jepson v. HSBC Bank USA, Nat'l Ass'n,* No. CIV. 12–12179–LTS, 2013 WL 639184, at *4 (D. Mass. Feb. 20, 2013), *aff'd,* (1st Cir. June 23, 2014); *In re Marron,* 462 B.R. 364, 374 (Bankr. D. Mass. 2012), *aff'd,* 499 B.R. 1 (D. Mass. 2013); *Rosa v. Mtge. Elec. Registration Sys., Inc.,* 821 F.Supp.2d 423, 429 (D. Mass. 2011); *In re Marron,* 455 B.R. 1, 5–6 (Bankr. D. Mass. 2011); *Kiah v. Aurora Loan Services, LLC,* No. 10–40161–FDS, 2011 WL 841282 at *8 (D. Mass. Mar. 4, 2011); *In re Lopez,* 446 B.R. 12, 17–19 (Bankr. D. Mass. 2011); *In re Huggins,* 357 B.R. 180, 184–185 (Bankr. D. Mass. 2006); *Epps v. Bank of Am., N.A.,* No. 15–P–1095, 2016 WL 5898827 at *2 (Mass. App. Ct. October 11, 2016); *Gillogly v. Deutsche Bank Nat'l Trust Co.,* No. 15–P–1216, 2016 WL 3634236 at *1 (Mass. App. Ct. July 7, 2016); *Barcelos v. Deutsche Bank Nat'l Trust Co.,* No. 13–P–1361, 2014 WL 2974891, at *2 (Mass. App. Ct. July 3, 2014); *Jeevanandam v. Santander Bank, N.A.,* No. MICV201408234, 2014 WL 7641545, at *2–3 (Mass. Super. Nov. 25, 2014); *Commonwealth v. Bank of Am., N.A.,* No. 11–4363–BLS1, 2012 WL 6062747, at *15 (Mass. Super. Dec. 3, 2012); *Adamson v. Mtge. Elec. Registration Sys., Inc.,* No. 11–0693–H, 2011 WL 1136462, at *3 (Mass. Super. Ct. Mar. 23, 2011); *Schaefer–Ung v. U.S. Bank, Nat'l Ass'n,* 25 LCR 39, 49 (2017); *Marrett v. Residential Credit Sols., Inc.,* 24 LCR 579, 584 (2016); *Pappas v. Deutsche Bank Nat'l Trust Co.,* 24 LCR 221, 222 (2016); *Campbell v. Federal Nat'l Mortgage Ass'n,* 23 LCR 641, 645–646 (2015); *Jenne v. Aurora Loan Servs. LLC,* 22 LCR 258, 260 (2014); *Hendricks v. Federal Nat'l Mortgage Ass'n,* 22 LCR 184, 185–186 n.1 (2014), *aff'd,* 89 Mass. App. Ct. 1112 (2016); *Mitchell v. U.S. Bank Nat'l Ass'n,* 22 LCR 120, 130 (2014); *Stephens–Martin v. Bank of New York Mellon Trust Co.,* 21 LCR 516, 519–520 (2013); *Pehl v. Countrywide Bank, N.A.,* 21 LCR 58, 61 (2013); *Abate I,* 20 LCR at 635, *aff'd* sub nom. *Abate II,* 470 Mass. 821 (2015); *Lyons v. Mtge. Elec. Registration Sys., Inc.,* 19 LCR 44, 45–46 (2011).

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

United States Bankruptcy Court
Western District of Pennsylvania

In re:                                                                Case No. 17-70045-JAD
Michael David Scott                                                   Chapter 7
          Debtor

## CERTIFICATE OF NOTICE

District/off: 0315-7          User: gamr              Page 1 of 2              Date Rcvd: Jul 21, 2017
                             Form ID: pdf900         Total Noticed: 1

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jul 23, 2017.
db            +Michael David Scott,    772 Saint Joseph St.,    c/o FCI Loretto,    Loretto, PA 15940-7006

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                  TOTAL: 0

          ***** BYPASSED RECIPIENTS *****
NONE.                                                                                  TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.


**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jul 23, 2017                              Signature:   /s/Joseph Speetjens


---

# CM/ECF NOTICE OF ELECTRONIC FILING


The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on July 21, 2017 at the address(es) listed below:
          Brett L. Messinger    on behalf of Creditor    US Bank National Association as Trustee for Credit
          Suisse First Boston Mortgage Securities Corp. Mortgage Backed Pass Through Certificates Series
          2004-AR-7 and Ocwen Loan Servicing, LLC blmessinger@duanemorris.com, LMTryon@duanemorris.com
          Brett L. Messinger    on behalf of Defendant    U S Bank National Associates as Trustee For Credit
          Suisse First  Boston Mortgage Securities Corp blmessinger@duanemorris.com,
          LMTryon@duanemorris.com
          Brett L. Messinger    on behalf of Creditor    U.S. Bank, National Association as Trustee Under the
          Pooling and Servicing Agreement Dated as of May 1, 2006, GSAMP Trust 2006-HE3 Mortgage
          Pass-Through Certificates Series 2006-HE3 and Ocwen Loan Ser blmessinger@duanemorris.com,
          LMTryon@duanemorris.com
          Denver E. Wharton    on behalf of Creditor    Khanda, LLC dew@ktwllaw.com,
          r42123@notify.bestcase.com
          Heather A. Sprague    on Behalf of the United States Trustee by    on behalf of U.S. Trustee
          Office of the United States Trustee Heather.Sprague@usdoj.gov,
          Lisa.Geyer@usdoj.gov;David.A.Milko@usdoj.gov;David.A.Berry@usdoj.gov;Steven.W.Albright@usdoj.gov;
          Andrew.F.Cetnarowski@usdoj.gov
          James Warmbrodt    on behalf of Creditor    BANK OF AMERICA, N.A. bkgroup@kmllawgroup.com
          James A. Prostko    on behalf of Creditor    U.S. Bank, National Association, as Trustee, et al...
          pawb@fedphe.com,  james.prostko@phelanhallinan.com
          James A. Prostko    on behalf of Attorney James A. Prostko pawb@fedphe.com,
          james.prostko@phelanhallinan.com
          James R. Walsh    jwalsh@spencecuster.com,
          trustee@spencecuster.com;kpetak@spencecuster.com;rsnyder@spencecuster.com;lkinsey@spencecuster.co
          m;mskunta@spencecuster.com;jwalsh@ecf.epiqsystems.com
          James R. Walsh    on behalf of Trustee James R. Walsh jwalsh@spencecuster.com,
          trustee@spencecuster.com;kpetak@spencecuster.com;rsnyder@spencecuster.com;lkinsey@spencecuster.co
          m;mskunta@spencecuster.com;jwalsh@ecf.epiqsystems.com
          Jeremy J. Kobeski    on behalf of Creditor    The Bank Of New York Mellon Trust Company, N.A., et.
          al. pawb@fedphe.com
          Jill Locnikar    on behalf of Creditor    United states of america jill.locnikar@usdoj.gov,
          patricia.fitzgerald@usdoj.gov;deborah.verrilla@usdoj.gov
          Jill Locnikar    on behalf of Defendant    United States Department of Justice, et al.
          jill.locnikar@usdoj.gov,  patricia.fitzgerald@usdoj.gov;deborah.verrilla@usdoj.gov
          Jill Locnikar    on behalf of Defendant    U S Department of Education jill.locnikar@usdoj.gov,
          patricia.fitzgerald@usdoj.gov;deborah.verrilla@usdoj.gov
          Jonathan W. Chatham    on behalf of Creditor    PA Dept of Revenue RA-occbankruptcy7@pa.gov
          Jonathan W. Chatham    on behalf of Attorney    PA Dept of Revenue RA-occbankruptcy7@pa.gov
          Kevin J. Petak    on behalf of Trustee James R Walsh kpetak@spencecuster.com,
          mskunta@spencecuster.com;lkinsey@spencecuster.com;rsnyder@spencecuster.com
          Kevin J. Petak    on behalf of Interested Party James R Walsh kpetak@spencecuster.com,
          mskunta@spencecuster.com;lkinsey@spencecuster.com;rsnyder@spencecuster.com

District/off: 0315-7          User: gamr              Page 2 of 2                Date Rcvd: Jul 21, 2017
                             Form ID: pdf900          Total Noticed: 1

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system (continued)
          Kevin J. Petak    on behalf of Trustee James R. Walsh kpetak@spencecuster.com,
           mskunta@spencecuster.com;lkinsey@spencecuster.com;rsnyder@spencecuster.com
          Kevin Scott Frankel    on behalf of Defendant    Korde & Associates P C pabk@logs.com
          Kristen D. Little    on behalf of Defendant    Korde & Associates P C pabk@logs.com
          Kunal Janak Choksi    on behalf of Defendant    Internal Revenue Service kunal.j.choksi@usdoj.gov
          Leonard P. Vigna    on behalf of Creditor    Tufts Investments, LLC lpv@ktwllaw.com,
           ams@ktwllaw.com;r42123@notify.bestcase.com
          Office of the United States Trustee    ustpregion03.pi.ecf@usdoj.gov
          Ronald E. Reitz    on behalf of Creditor ROSE  AKE rreitz@margolisedelstein.com
          Ronald E. Reitz    on behalf of Plaintiff    BONABERI CORPORATION rreitz@margolisedelstein.com
          Ronald E. Reitz    on behalf of Creditor    BONABERI CORPORATION rreitz@margolisedelstein.com
          Ronald E. Reitz    on behalf of Plaintiff ROSE  AKE rreitz@margolisedelstein.com
          Stephen G. Murphy    on behalf of Defendant    The Commonwealth of Massachusetts
           murphys@dor.state.ma.us
          Stephen G. Murphy    on behalf of Defendant    Commonwealth of Massachusetts murphys@dor.state.ma.us
          William E. Miller    on behalf of Defendant    US Bank National Association as Trustee
           wmiller@sterneisenberg.com,  bkecf@sterneisenberg.com
          William E. Miller    on behalf of Creditor    U.S. Bank, National Association As Trustee For et al.
           wmiller@sterneisenberg.com,  bkecf@sterneisenberg.com
          William E. Miller    on behalf of Creditor    U.S. Bank, National Association as Trustee Under the
           Pooling and Servicing Agreement Dated as of May 1, 2006, GSAMP Trust 2006-HE3 Mortgage
           Pass-Trough Certificates Series 2006-HE3 C/O Phelan Hallinan wmiller@sterneisenberg.com,
           bkecf@sterneisenberg.com
                                                                                        TOTAL: 33