UNITED STATES BANKRUPTCY COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA


In re: Michael David Scott

Chapter 7

     Debtor                17-70045-JAD


Tufts Investment LLC

     Movant


     V.


Michael David Scott

     Respondent


## Response To Movant's Motion For Relief From
## The Automatic Stay For 92-94 George Street


The Movant's request for relief from the automatic stay is inappropriate at this time. The mortgage filed in the Suffolk County registry of deeds BK 51296 Pg 11 describes the property mortgaged as "140 Wilmington Avenue, Dorchester MA 02124". Ergo, the lien, (if any) against the property at 92-94 George Street is inchoate.


The Debtor takes no position but rather, in fact states that the Chapter 7 Trustee should strip the lien off the property and

1

dispose of the assets to benefit the estate. See In Re: Josnowski
314 B.R. 23 (Bankr. D. De 2004) (mortgagee not permitted to record
unperfected mortgage after the commencement of debtor's bankruptcy
case, nor was mortgagee permitted to assert equitable lien).
Moreover, the lender will not be harmed because the mortgagee is
covered by lender's title insurance. Also see Eastern Bank v.
Benton (In Re: Benton) 563 B.R. 113 (Bankr. D. Mass 2017) (Chapter
7 trustee was awarded summary judgement on his claim that he was
allowed under 11 U.S.C.S. 544(a) to avoid mortgage on debtor's
residence because exhibit that was attached to mortgage described
another property debtors owned, mortgage was outside the chain of
title for residence and failed to provide notice to bona fide
purchaser).

    In addition to the apparent defective mortgage, the motion
for relief from stay is against the Debtor, but the title to the
property and the mortgage was given by Henrietta Eversley, Trustee
of the Macaulaey Family Realty Trust.

    The Debtor does not hold title to the property in his name,
the movant must serve the trust properly or request that the
Debtor accept service on behalf of the trust and at this time the
debtor will not do so, because the mortgage is not valid and is
subject to liquidation by the Chapter 7 Trustee. See (In Re:
Benton).

Respectfully Submitted;

Michael David Scott

772 Saint Joseph Street

Loretto PA 15940

October 19, 2017

## Certificate Of Service

I Michael David Scott certify that I have served a copy of this response to the following parties on October 20, 2017.

Leonard P. Vigra, Esquire

Kaminsky, Thomas, Wharton & Lovette

360 Stonycreek Street

Johnstown PA 15901

Kevin J. Petak Chapter 7 Trustee

United States Trustee

Respectfully Submitted;

Michael D. Scott



2013 00038520
Bk: 51296 Pg: 11 Page: 1 of 20
Recorded: 04/16/2013 03:45 PM
ATTEST:Francis M. Roache, Register
Suffolk County Registry of Deeds

**TERED LAND**



2013 00817307
Cert#: 129980 Bk: 645 Pg: 180
Doc: MTG 04/16/2013 03:18 PM SF
ATTEST:Francis M. Roache, Register
Suffolk County Registry of Deeds

# CONSTRUCTION MORTGAGE

# AND SECURITY AGREEMENT

## ARTICLE 1
## REFERENCE DATA AND DEFINITIONS

1.1 <u>Reference Data</u>:

Date: April 15, 2013

Borrower: Henrietta Eversley, Trustee of the Macaulay Family Realty Trust
under Declaration of Trust dated July 30, 2010

Borrower's Address: 92 Carnegie Avenue, East Orange, NJ 07018

Lender: Tufts Investments LLC

Lender's Address: 30 Marie Way, Randolph, MA 02368

Property: 140 Wilmington Avenue, Dorchester, MA 02124

Mortgage Amount: $200,000.00

Maturity Date: June 15, 2013

1.2 <u>Definitions</u>: Whenever used in this mortgage, the following terms shall have the
respective meanings set forth opposite such term:

    (a) <u>Buildings</u>: All buildings, structures, and other improvements now or
subsequently constructed or placed upon the Real Estate.

    (b) <u>Collateral</u>: All personal property belonging to the Borrower situated on, used in
connection with, or relating to the Real Estate including, without limitation, accounts,
accounts receivable, chattel paper, contract rights, documents, instruments, general
intangibles, inventory, insurance, deposits, profits, records, rents, revenues, supplies,
trade names, furniture, furnishings, equipment and building and construction materials
owned by the Lender and placed on or used for the operation of the Real Estate or paid
from the proceeds of the Loan including items which are not and can not by agreement of

the Borrower and Lender be deemed real estate; proceeds of any of the foregoing; and any governmental licenses, permits and approvals for the ownership or operation of the Real Estate and Buildings or any part thereof.

(c)    Fixtures:  All items of property of every kind and nature now or subsequently owned or leased by the Borrower and affixed or attached to or used or intended to be used in connection with the operation and maintenance of the Real Estate, including, without limitation, all boilers; pumps; tanks; computers; pipes; conduits; electrical and lighting equipment; wiring; heating, plumbing, ventilating and safety apparatus; sprinklers; elevators; escalators; refrigerators; air conditioning and air cooling equipment, appliances and furniture; floor coverings; fire prevention or extinguishing equipment; storm windows and doors; and other building service equipment reasonably necessary to the continued use and operation of the Mortgaged Property.  Each of the foregoing are, insofar as the same can by agreement of the Borrower and Lender be made, a part of the Real Estate and subject to this Mortgage.

(d)    Guarantor (individually and/or collectively, as the case may be)

(e)    Leases:  All leases and occupancy or use agreements, oral or written, present or future, covering or relating to all or any part of the Real Estate, together with all options, renewals, amendments, and guarantees thereof, and all rents, profits, and other benefits arising from any lease or the use of the Real Estate including security deposits.

(f)    Legal Requirements:  (i) Any judicial decision, statute, rule, regulation, permit, certificate or ordinance of any court, governmental or municipal body or public official in any way applicable to Borrower or the Mortgaged Property, (ii) any and all Leases and other contracts (written or verbal) of any nature to which Borrower may be bound and (iii) any and all restrictions, easements or other covenants or agreements of record affecting the Mortgage Property.

(g)    Maker:  The party or parties designated as the Maker or Makers of the Note. Borrower and Maker may or may not be the same party.

(h)    Borrower:  The person who executes this Mortgage and any subsequent owner of the Mortgaged Property and his respective heirs, executors, administrators, successors, and assigns.  If Mortgage consists of more than one Person, all agreements and covenants made by Borrower shall be joint and several.

(i)    Mortgage Obligations:  The Borrower's and the Maker's obligations to (i) pay the Note of such part thereof as shall from time to time be advanced, together with interest thereon, and provided therein; (ii) perform all covenants and agreements in the Loan Documents; and (iii) pay, perform, or discharge all other obligations, covenants, representations or warranties contained in or created under the Loan Documents or in or under any other instrument or document given or entered into as security for or in connection with the Note.

(j)    Note:  That certain promissory note of even date made by the Borrower in favor of the Lender in the Note Amount and all modifications, renewals, and extensions thereof.

(k)    Permitted Encumbrances:  Any mortgage, lien, restriction or encumbrance set forth or referred to in the Lender's title insurance policy issued in connection with the execution and recording of this mortgage or consented to in writing by the Lender.

(l)    Person:  an individual, trust, corporation, partnership, or unincorporated association.

(m)    Real Estate:  The land described in Exhibit A to this Mortgage, together with all Buildings and Fixtures and all rights of way or use, servitudes, licenses, permits, Leases, and other rights now or subsequently existing, belonging, or pertaining to the land, including, without limitation, all judgments, awards of damages, and settlements made as a result of or in lieu of any talking of the land or for any damage to the land or any improvement thereon.

(n)    Rents:  All of the rents, income, profits, and other benefits paid or payable for using, leasing, licensing, possessing, the Mortgage Property.

(o)    Taxes:  All real estate and personal property taxes, water, sewer, and utility rates and charges; and all other taxes, charges, condominium unit assessments for common charges and other assessments and any interest, costs or penalties with respect thereto of any kind and nature which may be assessed, levied, or imposed upon the Mortgaged Property or the ownership, use, occupancy or enjoyment thereof.

(p)    The singular number shall include the plural and the plural the singular as the context may require and the use of any gender shall include all genders.

## ARTICLE II
## GRANT OF MORTGAGE

2.1    Grant of Mortgage.  Borrower grants to Lender the Mortgaged Property, with MORTGAGE COVENANTS, subject to the Permitted Encumbrances, to secure the full and timely payment, performance and discharge of the Mortgage Obligations.  This Mortgage is upon the STATUTORY CONDITION and upon the further condition that all obligations and conditions secured by this Mortgage shall be duly performed and observed and upon any breach of or default with respect to the same, Lender shall have the STATUTORY POWER OF SALE and all other powers, rights, and remedies afforded by law or equity.

## ARTICLE III
## AFFIRMATIVE COVENANTS

Borrower covenants and agrees with Lender that:

Construction Mortgage                                            Page 3 of 18

3.1   <u>Payment and Performance</u>:  Borrower will pay the Note, as and when called for in the Loan Documents and will perform all of the Mortgage Obligations, in full and on or before the dates they are to be performed.

3.2   <u>Existence</u>:  Borrower will preserve and keep in full force and effect its existence, rights, franchises, and trade names.'

3.3   <u>Compliance with Legal Requirements</u>:  Borrower will promptly and faithfully comply with, conform to, and obey all present and future Legal Requirements, affecting the Mortgaged Property.

3.4   <u>Payment of Taxes</u>:  Subject to the provisions of Paragraph 9.7, Borrower will duly pay and discharge, or cause to be paid and discharged, the Taxes, not later than the due date thereof, or the last day on which they may be paid without any fine, penalty, interest or cost.

3.5   <u>Repair</u>:  Borrower will make such repairs and replacements as may be necessary to keep and maintain the Mortgaged Property in at least as good repair, order and condition as the same now are or may subsequently be put in while this Mortgage is outstanding, except to the extent construction of or renovation to any Building requires otherwise.

3.6   <u>Insurance</u>:  Borrower shall keep in force and effect with respect to the Mortgaged Property fire and casualty insurance with extended coverage endorsements including vandalism and malicious mischief in such amounts and with such companies as Lender may require, and in no event less than 100% of the full replacement value or such agreed amount as will preclude the applicability of any co-insurance provisions.  Borrower shall keep in force and effect such other insurance, including without limitation, workmen's compensation insurance, public liability insurance, builder's risk insurance, boiler insurance, insurance for loss of rents for at least one year's rental in the event of casualty and flood hazard insurance as Lender may from time to time require or as may be required by any applicable legal requirement.  All such insurance policies (with evidence of payment of premiums thereon satisfactory to Lender) shall be deposited with, and (except for public liability and any other coverage Lender may determine shall not be payable to it in case of loss, but on which Lender shall in any event be named as an additional insured) shall be first payable in case of loss to Lender.  All renewals or replacements of such insurance together with evidence of payment of premiums thereon satisfactory to Lender shall be delivered to Lender fourteen days before the expiration date of then current insurance.  All insurance shall be written by such companies, on such terms, in such form and for such periods and amounts as Lender shall approve and shall not be canceled or modified without 30 days' prior written notice to Lender.  No settlement on account of any loss covered by such insurance shall be effected without the prior written consent of Lender.

3.7   <u>Restoration Following Casualty</u>:  If any act or occurrence results in damage to the Mortgaged Property, Borrower will give notice thereof to Lender and, if so instructed by Lender, will promptly, at Borrower's expense, regardless of whether the insurance proceeds (if any) shall be sufficient for the purpose, commence and continue diligently to completion to restore the Mortgaged Property as nearly as possible to its value, condition and character immediately prior to such damage.  If Lender determines that the proceeds of the insurance policies are sufficient to

restore the Mortgaged Property as nearly as possible to its value, condition and character immediately prior to such damage or if Mortgage provides additional sums to Lender's satisfaction so that the aggregate of such sums and the insurance proceeds will be sufficient for such sums and the insurance proceeds will be sufficient for such purpose, the proceeds of the insurance policies, together with the additional sums provided by Borrower, shall be placed in a separate account for the benefit of a Lender and Borrower to be used to restore the Mortgaged Property as nearly as possible to its value, condition and character immediately prior to such damage. In the event Lender determines that such proceeds are insufficient for such purpose or to the extent that any funds remain after the Mortgaged Property has been restored or repaired, such proceeds or remaining funds shall be applied against the Mortgage Obligations.

3.8     Inspection: Borrower will permit Lender, and its agents, representatives, and employees, to inspect the Mortgaged Property and Borrower's records relating thereto at all reasonable times.

3.9     Defense of Title: If the title of Borrower to, or the property interest of Lender in, the Mortgaged Property or any part thereof shall be endangered or shall be challenged, directly or indirectly, Borrower shall take all necessary and proper steps for the defense of such title or interest.

3.10     Books and Records: Borrower shall maintain complete and accurate books and records reflecting the results of its operations and will furnish or cause to be furnished to Lender, on or before ninety (90) days after the end of Borrower's fiscal year: (a) a complete statement of Borrower's, Maker's and Guarantor's respective financial affairs in form, substance, and detail acceptable to Lender, such reports to include a balance sheet and statement of profit and loss for the immediately preceding fiscal year of Borrower, Maker, and Guarantor; and (b) an operating statement, in such detail as Lender may reasonably require, which accurately presents Borrower's operations of the Mortgaged Property for the fiscal year then ended. At any time, and from time to time, Borrower shall deliver to Lender evidence of the payment of Taxes, insurance, and other operating expenses for the Mortgaged Property and such other data as Lender shall reasonably request with respect to the Mortgaged Property.

3.11     Environmental Compliance: Borrower will comply strictly with the requirements of Massachusetts General Laws Chapter 21E and other Legal Requirements, as the same may be amended from time to time, and notify the Lender promptly in the event of any "release" of "oil" or "hazardous material", as those terms are defined in said statute, upon the Mortgaged Property. Notwithstanding any provisions in the Loan Documents limiting the Borrower's liability to the Mortgaged Property, Borrower agrees to indemnify and hold the Lender harmless from and against all loss, liability, damage, and expense suffered or incurred by the Lender under or on account of Chapter 21E, including the assertion of any lien pursuant to Section 13 of Chapter 21E taking priority over the lien of this Mortgage.

3.13     Leases and Rents: Lender shall, at any time subsequent to an Event of Default, have the right to collect all Rents, incomes and other sums due and owing from the Mortgaged Property directly from any lessee, tenant, or any other obligor obligated to pay the same. Lender at any time may contact each and every such lessee, tenant, or obligor and any other party

obligated on the Leases, informing them to make payment of all sums due and owing Borrower or any other party directly to Lender to the credit of Borrower.

## ARTICLE IV
## NEGATIVE COVENANTS

Borrower covenants that, until all Mortgage Obligations shall have been paid in full or fully performed and discharged:

4.1    Use Violations:  Borrower will not use, maintain, operate or occupy, or allow the use, maintenance, operation or occupancy of the Mortgaged Property in a manner which (a) violates any Legal Requirement or the Permitted Use, (b) allows a valid, non-conforming use thereof to lapse or be forfeited, (c) may be dangerous unless safeguarded as required by law, (d) constitutes a public or private nuisance or (e) makes void, voidable or cancelable, or increases the premium of, any insurance then in force with respect thereto.

4.2    Alterations:  Borrower will neither demolish any Building nor commit or permit any waste of the Mortgaged Property and will not (subject to the provisions of Paragraphs 3.5 and 3.7), without the prior written consent of Lender, make or permit to be made any alterations or additions to the Mortgaged Property of a material nature.

4.3    No Further Encumbrances:  Mortgage will not, without the prior written consent of Lender, create, place, suffer or permit to be created or placed or, through any act or failure to act, acquiesce in the placing of or allow to remain, any mortgage, lien, security interest, or encumbrance on, regardless of whether same are expressly subordinate to the liens of the Loan Documents, the Mortgaged Property, other than the Permitted Encumbrances and any subsequent Leases approved or permitted by Lender.

## ARTICLE V
## EVENTS OF DEFAULT

Any one or more of the following shall be an Event of Default:

5.1    Payment of Note:  If Borrower and/or Maker shall fail, refuse, or neglect to pay, in full, the Note on its maturity date or at the date fixed for prepayment or by acceleration, or any installment of principal and/or interest due under the Note as the same shall become due and payable.

5.2    Performance of Mortgage Obligations:  If Borrower shall fail, refuse or neglect to perform and discharge fully and timely any of its obligations under this Mortgage or the Loan Documents (other than Note payments specified in Paragraph 5.1) as and when required, and such failure or neglect shall not be curable or, if curable, shall continue uncured for more than thirty (30) days after Lender shall give Borrower written notice thereof.

5.3    False Representation:  If any representation or warranty made by Borrower, Guarantor, Maker, or others in, under or pursuant to the Loan Documents or any other

documents executed in connection therewith shall be false, erroneous, or misleading in any material respect.

5.4    Bankruptcy:  If (a) a petition is filed by or against Borrower, Maker, or any Guarantor (or a general partner of any of the foregoing) seeking relief under the bankruptcy, arrangement, reorganization or other debtor relief laws of the United States or any state or other jurisdiction or (b) a court shall enter an order, judgment, or decree appointing a receiver or trustee for it or him, or for all or any part of its or his property, and (c) such petition, order, judgment, or decree shall not be and remain discharged or stayed within a period of forty-five (45) days after its entry.

5.5    Default under other Liens:  A default in the performance of any covenant contained in any Permitted encumbrance or if the holder of any lien on the Mortgaged Property institutes foreclosure or other proceedings for the enforcement of its remedies thereunder.

5.6    Sale, Lease, or Other Transfer:  Any sale, lease, exchange, assignment, conveyance, transfer of possession, or other disposition of the Mortgaged Property or any legal or beneficial interest therein or any part thereof by Borrower other than as expressly permitted by or pursuant to the terms of this Mortgage to any party, and any proceeds of such sale shall constitute a trust fund for the benefit of Lender.

5.7    Change of Ownership:  Any involuntary change in ownership of the Mortgaged Property, in whole or in part.  If Borrower is a corporation, any change in the stock ownership of Borrower.  If Borrower is a partnership (limited or general), any present partner of Borrower resigns or ceases being a partner of Borrower for any reason or if there is any addition to the partners of Borrower without the prior written consent of Lender.  If Borrower is a trust, the trust is terminated or there is a change in the beneficial interest of the trust.

5.8    Death or Incapacity:  The death, dissolution, business failure, merger, or similar event affecting the Borrower, Maker, and Guarantor of the Mortgage Obligations.

5.9    Other Defaults:  The occurrence of any Event of Default, as defined or described in any of the other Loan Documents, including the failure of Borrower to maintain in effect insurance satisfactory to Lender or to restore or rebuild any Building promptly after a fire or other casualty.

5.10    Cross Default:  A default by Borrower either collectively or individually under any other loan provided by Lender whether now in existence or made hereafter to Borrower shall constitute a default under the Loan. Also, a default under the Loan shall constitute a default under any other loan provided by Lender whether now in existence or made hereafter to Borrower either collectively or individually.

**ARTICLE VI**
**DEFAULT AND FORECLOSURE**

If an Event of Default shall occur, Lender may, at its election, exercise any or all of the following remedies:

6.1    Acceleration and Future Advances:  Declare the outstanding principal balance of the Note immediately due and payable, without notice, demand, or action of any nature. Additionally, Lender shall not be required to make any further advances on the Note or other Loan Documents upon the occurrence of an Event of Default or an event which, with due notice or lapse of time, or both, would constitute an Event of Default.

6.2    Entry on Mortgaged Property:  Enter upon the Mortgaged Property and take exclusive possession thereof and of all books, records, and accounts relating thereto.

6.3    Foreclosure of Mortgaged Property:  Sell, together or in parcels, the Mortgaged Property or any type thereof and the benefit and equity of redemption of Borrower therein pursuant to the STATUTORY POWER OF SALE granted in Article II.

6.4    Sale of Personalty and Fixtures:  Sell the Collateral and/or the Fixtures, in whole or in part, at one or more public or private sales, in such manner, at such time or times and upon such terms as Lender may determine or as provided by law.  The requirement of reasonable notice shall be met if notice is mailed, proper postage prepaid, to Borrower or other person entitled thereto at least five (5) days before the time of sale or disposition of the Collateral and/or Fixtures.

6.5    Other Remedies:  Exercise any other remedy now or hereafter existing in equity, at law, by virtue of statute or otherwise.

6.6    Foreclosure and Sale:  (a) If there shall be a foreclosure sale, Lender shall be entitled to retain one percent (1%) of the purchase money, in addition to the other costs and expenses allowed by statute and this Mortgage, as additional damages not conducive to calculation; (b) if bankruptcy or other proceedings affecting Borrower involve Lender's interest under this Mortgage, Borrower shall reimburse Lender for all costs and expenses, including court costs and reasonable attorney's fees, incurred by Lender in protecting its interest in such proceedings (it being agreed that this clause shall also apply prior to the occurrence of an Event of Default); (c) if foreclosure proceedings are begun because of Borrower's default and are substantially terminated prior to a foreclosure sale for any reason, Lender shall be entitled to all costs and expenses incurred in connection with such proceedings, including court costs and attorneys' fees; and (d) if Lender enters into possession of the Mortgaged Property because of Borrower's default, Borrower shall reimburse Lender for all costs and expenses, including court costs and attorneys' fees, incurred in the care and management of and completion of any development work with respect to the property and in defending any action brought by Borrower arising out of Lender's possession.

6.7    Separate Sales and Marshalling:  Lender may sell all or any portion of the Mortgaged Property together or in lots or parcels and in such manner and order as Lender, in its sole discretion, may elect.  Borrower irrevocably and unconditionally waives and releases any right to appraisal or marshalling of assets.

## ARTICLE VII
## CONDEMNATION

7.1    Application of Proceeds:  If all or any part of the Mortgaged Property is condemned or otherwise taken for public use under the power of eminent domain, all amounts awarded for the taking of, or injury to, the Mortgaged Property shall be paid to Lender who shall have the right, in its sole discretion, to apply the amounts so received against (i) the costs and expenses of Lender, including reasonable attorneys' fees incurred in connection with collection of such amounts and (ii) the balance against the Mortgage Obligations; provided, however, that if Lender determines, in its sole discretion, that the proceeds of such award are sufficient to restore, repair, replace, and rebuild the Mortgaged Property as nearly as possible to its value, condition, and character immediately prior to such taking, or if Borrower provides additional sums to Lender's satisfaction for such purpose, then the proceeds of such award, together with additional sums provided by Borrower, shall be placed in a separate account for the benefit of Lender and Borrower to be used to restore, repair, replace, and rebuild the Mortgaged Property as nearly as possible to its value, condition, and character immediately prior to such taking.

## ARTICLE VIII
## SECURITY AGREEMENT

8.1    Security Interest:  This Mortgage shall be construed as a Mortgage on real property, and it shall also constitute and serve as a security agreement on personal property within the meaning of, and shall constitute a first pledge and assignment and a first security interest under the Uniform Commercial Code with respect to the Collateral, Fixtures, Leases, and Rents until the Mortgage Obligations shall be paid in full and/or be duly performed and this Mortgage shall be discharged of record.  Borrower has granted, and by these presents does grant, to Lender a security interest in and to all of Borrower's right, title, and interest in, to, and under the Collateral, Fixtures, Leases, and Rents, to secure the full and timely payment and performance and discharge of the Mortgage Obligations.  Upon an Event of Default, Borrower shall gather all of the Mortgaged Property which is Collateral at a location designated by Lender for sale pursuant to the terms hereof.

8.2    Financing Statements:  Borrower shall execute and deliver to Lender, in form and substance satisfactory to Lender, such financing statements and such further assurances as Lender may, from time to time, consider reasonably necessary to create, perfect, and preserve Lender's security interest herein granted, and Lender may in the name of Borrower execute and cause such statements and assurances to be recorded and filed at such times and places as may be required or permitted by law to so create, perfect, and preserve such security interest.  This Mortgage shall be effective as a financing statement filed as a fixture filing in the Registry of Deeds where the land lies from the date of its filing for record covering the Fixtures.  The address of Borrower and Lender are as set forth herein.  Borrower's Address is its sole place of business within the State.  The above described goods are or are to become fixtures related to the Real Estate of which Borrower is the record title owner.

8.3    Uniform Commercial Code Remedies:  Lender shall have all the rights, remedies, and recourses with respect to the Collateral, Fixtures, Leases, and Rents afforded a secured party by the aforesaid Uniform Commercial Code in addition to, and not in limitation of, the other rights, remedies, and recourses afforded by the Loan Documents and at law.

## ARTICLE IX
## MISCELLANEOUS

9.1    Further Assurances:  Borrower shall, on demand of Lender, do any act or execute any additional documents (including the issuance of estoppel certificates or declarations of no set-off) reasonably required by the Lender to secure the Note or to confirm the lien of the Mortgage or any other Loan Document.

9.2    Notices:  Any notice, demand, or other communication under this Mortgage shall be deemed sufficiently given if hand delivered, telefaxed with confirmation of receipt, or mailed postage prepaid by overnight, certified, or registered mail, return receipt requested, to a party at its address.

9.3    Waivers, Extensions, and Releases:  The Lender may waive any one or more of the conditions or requirements contained in this Mortgage or extend the time for payment or performance of the Mortgage Obligations or release portions of the Mortgaged Property from the lien hereof or of the provisions of any other Loan Document, or grant any such indulgences as it deems appropriate, and any such waiver or indulgence in any instance or under any particular circumstance shall not be considered a waiver of such condition in any other instance or any other circumstance.  No course of dealing between the parties shall be interpreted or deemed to waive or vary the terms of this Mortgage.

9.4    Lender's Right to Pay Mortgage Obligations:  If Borrower or any other party shall fail to make any required payment or perform any of the Mortgage Obligations required by the Loan Documents, then at any time thereafter and without notice or demand upon Maker, Borrower or any other party, and without waiving or releasing any other right or remedy Lender may have because of the same, Lender may (but shall not be obliged to) make such payment or perform such act for the account of and at the expense of Borrower and shall have the right to enter upon the Mortgaged Property for such purpose and to take all such action thereon with respect to the Mortgaged Property as it may deem necessary or appropriate.  Borrower shall be obligated to repay Lender for all sums advanced by it pursuant to this Paragraph 9.4 with interest at the highest rate of interest specified in the Note.  Such payment or expenditure shall constitute additions to the Mortgage Obligations, shall be secured by the Loan Documents, and shall be paid by Borrower to Lender upon demand.

9.5    Severability:  If any provision of the Loan Document or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of the instrument in which such provision is contained nor the application of such provision to other persons or circumstances or other instruments referred to hereinabove shall be affected thereby, but rather, the same shall be enforced to the greatest extent permitted by law.

9.6    Entire Agreement and Modification:  The Loan Documents contain the entire agreements between the parties relating to the subject matter hereof and thereof, and all prior agreements relative thereto which are not contained herein or therein are terminated.  The Loan Documents may be amended or modified by only a written instrument or instruments executed by the party against which enforcement.  Any alleged amendment, waiver, release, or modification which is not so documented shall not be effective as to any party.

9.7    Tax Escrow:  To implement the provisions of Paragraph 3.4, Borrower, at Lender's request, shall pay to Lender, in advance, as and when directed by Lender and as escrowed sums, an amount equal to the annual Taxes (estimated wherever necessary) to become de for the tax year during which such payments is so directed.  The Escrowed Sums may be held by Lender in non-interest bearing accounts and may be commingled with Lender's other funds.

9.8    Sole Benefit:  This instrument and the other Loan Documents have been executed for the sole benefit of Borrower, Maker, Guarantor, and Lender and the successors and assigns of Lender.  Borrower, Maker, and Guarantor shall have no right to assign any of their rights under the Loan Documents to any party, including the right to receive advances under the Note or otherwise.

9.9    Business or Commercial Purpose:  Borrower warrants that the extension of credit evidenced by the Note secured hereby is solely for business or commercial purposes.

## ARTICLE X
## CONDITION OF THIS MORTGAGE

WHEREAS, Mortgagee is making a purchase and construction loan in the sum of Two Hundred Thousand Dollars ($200,000.00) to Mortgagor on the date hereof; and

WHEREAS, buildings and/or improvements on said Premises are in the process of construction or repair, or to be erected or repaired; and

WHEREAS, no such future advancements will be made until such time as Mortgage obtains permit to perform work on the existing building on the Premises; and

WHEREAS, Mortgagee agrees to comment the erection or repair or renovation or improvements of said buildings immediately of the date herewith and to complete the renovation or improvements to the satisfaction of the Mortgagee within two (2) months of the date herewith (the Completion Date).

WHEREAS, Mortgagor, for itself, its heirs and assigns, hereby further covenants and agrees with Mortgagee, its successors and assigns, that Mortgagor shall proceed with the construction of the buildings and improvements on said parcel according to plans and specifications and other construction requirements approved by the Mortgagee and in accordance with the applicable laws, ordinances, regulations, permits and approvals of the towns in which said Premises are located, or any agency or subdivision thereof, and of the Commonwealth of Massachusetts, and in accordance with any applicable restrictive covenants appearing of record in the town clerk's office in said towns and shall not substantially cease such construction for any period of more than seven (7) consecutive days; and

MORTGAGOR hereto hereby further covenants and agrees to and/or that:

1.      Keep all buildings erected on said Premises insured, against loss by fire or such other hazards, as Mortgagee may require, including without limitation, builder's all-risk coverage, in an amount equal to the greater of the full contemplated amount of the loan to used for acquiring, or erecting, such buildings, or One Hundred (100%) percent of the guaranteed completed buildings and improvements, with Mortgagee named as first mortgagee. Such policy shall provide that it may not be cancelled without thirty (30) days prior written notice to Mortgage and shall, at Mortgagee's option, be deposited with Mortgagee and maintained in full force and effect by Mortgagor throughout the term of this Mortgage.

2.      Furnish Mortgagee with satisfactory evidence that Mortgagor has in effect public liability, worker's compensation, and property damage insurance in an amount and with an insurance company acceptable to Mortgagee, which insurance company shall be licensed to do business in the Commonwealth of Massachusetts.

3.      Furnish all such waivers and releases of liens or claims on the Premises, equipment and accessions thereto, and such surveys as Mortgage may deem necessary or request for the protection of this Mortgage; and pay, when due, all insurance premiums, water rates, taxes and assessments, levied or assessed, upon the Premises and upon the Note, or debt hereby secured.

4.      Obtain the express written consent of Mortgagee before it shall sell, lease, mortgage, encumber or otherwise transfer any of its interest or ownership in the Premises. Mortgage agrees

not to change or modify any leases without the express consent of the Mortgagee in any way relating to the Premises. It is expressly understood by Mortgagor that in the event of such unauthorized transfer, encumbrance or modification, the whole of sale principal sum or so much thereof shall remain unpaid plus any accursed interest and charges due under the Note, shall immediately become due and payable at the option of the Mortgagee.

5.      Pay all costs, charges, and expenses, including reasonable attorneys fees, incurred by Mortgagee in any foreclosures or other legal proceeding for collection of the debt hereby secured an din protecting this Mortgage as a lien on the Premises and/or sustaining the lien of this Mortgage and in any other litigation or controversy arising from or connected with this Mortgage or the debt hereby secured whether or not suit is instituted.

6.      Keep the buildings and other improvements upon the Premises in good order and repair. Mortgagee is hereby authorized and empowered at its option to adjust or compromise any loss under any insurance policies in connection with the Premises and to collect and receive all insurance proceeds under such policy or policies, and apply all proceeds in its sole and absolute discretion, including without limitation restoring the Premises or as a credit to any portion of the indebtedness as evidenced by the Note, whether then matured or to mature in the future.

7.      In the event of condemnation or other taking of the Premises, or any part thereof, or for conveyance in lieu of condemnation or other taking, the proceeds of any award or claim for damages, direct or consequential, are hereby assigned and shall be paid to Mortgagee solely to the extend of sums due Mortgagee. Mortgagor hereby authorizes and grants a power of attorney coupled with an interest to Mortgagee to endorse any checks and drafts and execute any releases as may be necessary to effectuate this clause.

8.      In the event of default by Mortgagor under any encumbrance having priority over this Mortgage covering the Premises or in the event of any proceedings brought with respect to the Premises, including, but not limited to code enforcement, building or zoning violations, Mortgagee shall have the right, but not the obligation, to cure such default and to add the cost of same, including attorney's fees, with interest at the rate provided in the Note to the debt secured hereby. In the event of such default, the entire remaining unpaid balance secured by this Mortgage shall immediately become due and payable at the option of the Mortgagee.

9.      Mortgagor hereby grants to Mortgagee a security interest in all building materials, supplies and other property stored or delivered to the site of the Land or at other locations for incorporation into the Improvements located or to be located on the Land, and all fixtures, machinery, appliances, equipment, furniture and personal property of every nature whatsoever now or hereafter owned by Mortgagor, and located in or on, or attached to, and used or intended to be used in connection with or with the operation of, the Land or Improvements, or in connection with any construction conducted thereon and all extensions, accessions, additions, improvements, betterments, renewals, substitutions, and replacements to any of the foregoing, and all of Mortgagor's contract rights in contracts and agreements now or hereafter existing with respect to the Premises including without limitation, Mortgagor's construction contracts and contracts with architects, engineers, contactors and subcontractors. This Mortgage is a self-operative security agreement but other instruments as Mortgagee may request in order to perfect

its security interest or to impose the lien hereof more specifically upon any of such property.
Mortgage shall have all the rights and remedies in addition to those specified herein of a secured
party under the Uniform Commercial Code, as enacted in Massachusetts.

10.     At the option of the Mortgagee, an event of default ("Event of Default"), shall occur upon
the happening of any one or more of the following events:

    (a) A default in the payment of any of the installments of interest and/or principal or
        other sums when due under the Note, this Mortgage or any of the other loan
        documents evidencing or securing the loan (the "Loan Documents");

    (b) Failure by Mortgage to complete the construction and improvements at the Premises
        on or before the Completion Date;

    (c) Failure by Mortgage to duly keep, perform and observe any covenant, condition, or
        agreement contained in the Note, this Mortgage or the Loan Documents;

    (d) A breach of any material, covenant, warranty or untruth or any material
        misrepresentation of Mortgagor contained in the Note, this Mortgage, and/or in any of
        the Loan Documents;

    (e) If all or any part of the Premises shall be taken through condemnation;

    (f) The entry of a Court of last resort decision that an undertaking by Mortgagor to pay
        taxes, assessments, levies or liabilities and encumbrances in legally inoperative or
        cannot be enforced, or in the event of the passage of any law changing in any way or
        respect the laws now in force for the taxation of mortgage or debts secured thereby
        for any purposes, or the manner of collection of such taxes so as to adversely affect
        this Mortgage or the Indebtedness or other sums secured hereby; or

    (g) If the buildings and improvements to be constructed on the Premises shall be
        substantially damaged in any manner.

11.     If any event of default shall occur, in addition to all of the rights of Mortgagee as
provided herein, or by law or in equity, Mortgagee may, in its sole election, also exercise any/or
the followings rights, remedies and recourses;

    (a) Mortgagee may terminate any obligation to make any Loan advances and declare the
        entire unpaid balance of the Note immediately due and payable without notice.

    (b) Mortgagee may foreclose this Mortgage whether in full or with respect to any parcels
        comprising the Premises with the immediate right to receivership as set forth below,
        and in the regard, Mortgagor hereby waives to the full extent permitted by law, any
        and all rights to have the assets comprising the Premises marshalled upon any
        foreclosure hereof, and agrees that any Court having jurisdiction to foreclose this
        Mortgage may sell the Premises in part or as an entirety.

    (c) Mortgagee may enter into immediate possession of the Premises secured by this
        Mortgage or any part thereof (which Mortgagor agrees to surrender to Mortgagee)
        and, with or without such entry:

        a. Perform any and all work and labor necessary to complete the Improvements
           substantially according to the plans and specifications and take all appropriate
           steps to secure and protect the Premises, improvements and other collateral
           covered by the Loan Documents.  All sums expended by Mortgagee for such

purpose shall be deemed to have been paid to Mortgagor and to be secured by the Mortgages and the other Loan Documents; or

b. Manage, control or lease the same to such person or persons and at such rental as it may deem proper; and, with or without taking possession of the Premises, Mortgagee may collect all the rents, issues and profits therefrom, including those past due as well as those thereafter accruing, with the right in Mortgagee to cancel any lease, sublease, or tenancy for any cause which would entitle Mortgagor to cancel the same; to make such expenditures for maintenance, repairs and costs of operation as it may deem advisable; and after deducting the cost thereof an a commission of five percent (5) upon the gross amounts of rents collected, to apply the residue to the payment of any sums which are unpaid hereunder or under the Note.

c. The taking of possession or completion or the improvements and/or collection of rents under this Paragraph shall not prevent concurrent or later proceedings for the foreclosure of the Premises.

d. Mortgagor hereby appoints and constitutes Mortgagee it's true and lawful attorney-in-fact (said appointment to be exercised only after the happening of such event of default) with full power of substitution in Mortgagee to complete the Improvements in the name of the Mortgagor, and hereby further empowers Mortgagee as said attorney in fact as follows:

  i. To use any funds of Mortgagor, including any funds which may remain unadvanced under the Loan, and, in addition, to advance funds in excess of Loan Amount for the purpose of completing the Improvements substantially in accordance with the Plans;

  ii. To make such other additions, changes and corrections in the Plans which may be necessary or desirable to complete the improvements in the manner contemplated by the plans and specifications;

  iii. To employ the existing contractors, subcontactors and agents, architects and inspectors, so long as the same are not in default, or to dismiss the same or any of them if permitted by their respective contracts and employ others in their stead;

  iv. To execute all applications and certificates on behalf of Mortgagor which may be required by any contract documents relating to the Improvements;

  v. To prosecute and defend all actions or proceedings in connection with the construction of the Improvements or in any respect relating to the Premises, Improvements and other collateral covered by the Loan Documents; and

  vi. To do any and every act which Mortgagor could be required by Mortgagee to do in its own behalf.

  vii. This power of attorney is coupled with an interest and is irrevocable by death or otherwise. Mortgagor hereby indemnifies and holds harmless Mortgagee from losses, costs, damages, fees and expenses whatsoever associated with the exercise of this power of attorney and releases Mortgagee from all liability whatsoever arising out of or in any

manner connected with the exercise of this power of attorney an all actions taken pursuant thereto.

viii.   Upon the occurrence of an event of default and the exercise by Mortgagee of its rights and remedies, Mortgagee may use all materials purchased by Mortgagee in the development of the property and construction of the improvements, but Mortgagee shall be free to dispose of the balance of such material as it sees fit, and no liability shall accrue in favor of Mortgagor against Mortgagee as a result thereof except to credit any consideration received by Mortgagee therefore as a payment against the Loan.

ix.   Upon the occurrence of an event of default and the exercise by Mortgagee of its rights and remedies, all of Mortgagor's right, title and interest in and to all licenses, permits and authorizations relating to the development, construction or operation of the property or Improvements, shall be deemed assigned, transferred and set-over to Mortgagee to the extent permitted by law, and Mortgagor agrees to evidence said assignment, transfer and setting over by an appropriate instrument in writing at Mortgagee's request.

12.   Mortgage upon request shall deliver to Mortgagee all reports, licenses, permits, approvals, orders, agreements, options, and applications relating to or affecting the Premises and shall obtain and maintain all governmental licenses, permits and approvals necessary for the construction, use and operation of the Premises.

13.   Mortgagor further represents and warrants that as of the date of this Mortgage:

(a) It is paying its debts as such debts become due, the fair market value of its assets exceeds its liabilities and no bankruptcy or insolvency proceedings are pending or contemplated by or against Mortgagor.

(b) The land and all improvements thereon are in good order and repair, have not suffered any damage from fire or other casualty; no part of the Premises have been condemned or taken by eminent domain and no condemnation or other taking of the Premises or any part hereof is threatened or pending, or has been threatened with, any other title proceedings.

(c) There is no action, suit or proceedings pending, or, to the knowledge of Mortgagor, threatened against or materially affecting the Premises or the business operations conducted by Mortgagor or which involve the possibility of any judgment or liability not fully covered by insurance.

14.   Mortgage shall pay when due all taxes, assessments, water rates, sewer rents and other governmental taxes or charges of every kind and nature now or hereafter levied against the Premises, or any part thereof, and in default hereof Mortgagor may, at is option, pay the same and add such amounts to the debt secured hereby, which amounts shall bear interest at the rate set forth in the Note.  Upon request of Mortgagee, Mortgagor shall deliver to Mortgagee receipts for the payment of all items specified to this Paragraph prior to the date when the same shall become delinquent.

15.     All the conditions, obligations warranties, representations and covenants of Mortgagor set forth in the Commitment, shall survive the closing and delivery of this Mortgage, Mortgagor shall at all times perform and comply with all of said obligations, conditions, warranties, representations and covenants.

16.     Any breach in the covenants, conditions or agreements contained in this Mortgage or in any instrument given in connection with the Note and debt secured hereby, or in any other mortgage, debt or obligation of or from the Mortgagor to the Mortgagee shall constitute a default hereunder, and if such default shall exist for more than thirty (30) days, the entire debt secured hereby, together with all prepayment penalties to which the Mortgagee would be entitled under said Note or by law if said Note were prepaid in full at the end of said thirty-day period, shall become due and payable at the option of the Mortgagee, and the Mortgagee shall have the statutory Power of Sale as hereinafter provided.

17.     Any default under any existing loan or under any loan made after the date hereof by the Mortgagor and now held by the Mortgagee in which the Mortgagor is either a Maker of the Promissory Note thereof, shall constitute a default hereunder.  It is hereby agreed that this Mortgage is security for the payment of the aforesaid obligation and all other direct and contingent liabilities of the Maker hereof to the Lender, due or to become due and whether now existing of hereafter contracted.

**THIS MORTGAGE IS UPON THE STATUTORY CONDITIONS FOR ANY BREACH OF WHICH, OR FOR THE BREACH OF ANY OTHER CONDITION OR COVENTANT HEREIN CONTAINED.  THE HOLDER SHALL HAVE THE STATUTORY POWER OF SALE.**

EXECUTED as a sealed instrument this 15th day of April 2013.

BORROWER:


_Henrietta Eversley Trustee_
Henrietta Eversley, as Trustee of the
Macaulay Family Realty Trust u/d/t July 30, 2010

Construction Mortgage

## COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.

On this 15th day of April 2013, before me, the undersigned notary public, personally appeared, Henrietta Eversley, as Trustee of the Macaulay Family Realty Trust, proved to me through satisfactory evidence, which were a government issued driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that s/he signed it voluntarily for its stated purpose and to be her/his free act and deed.

_____
Notary Public
My Commission Expires:



Construction Mortgage

**Property Address: 92 George Street, Roxbury, MA**

# EXHIBIT A

## 92 GEORGE STREET, ROXBURY, MA

That vacant land with any improvements now or hereinafter erected thereon, commonly known and numbered as 92 George Street (Roxbury District, Ward 8, Parcel Number 00532) Suffolk County Massachusetts and more particularly described as follows:

Being the same premises described in a Final Decree of Foreclosure against Paul Lopez dated June 22, 1989 and recorded with Suffolk County Registry of Deeds on August 16, 1989 in Book 15757, Page 302.

Said premises contain approximately 1,703 square feet of land.

For further reference see Suffolk County Land Court Tax Lien Case No. 79304.

The Premises are conveyed subject to the following restrictions, which are for the benefit and use of the owner(s) (which term shall include its heirs, devisees, administrators, executors, legal representatives, successors and assigns) of that certain property which adjoins the Premises located at 94 George Street, Boston (Roxbury District), Suffolk County, Massachusetts:

a) the premises are to be used and maintained for open space purposes, including but not limited to gardening, landscaping, and off-street parking;

b) that no structures are to be erected, constructed or installed upon the Premises, whether permanent or temporary in nature except a tool/gardening shed, garage and/or fencing; provided however, notwithstanding any term or provision to the contrary contained herein, and subject to obtaining all necessary permits and licenses, the Grantee may construct upon the Premises an addition to the existing dwelling unit located at 94 George Street; and

c) that the premises shall not be used for unsightly storage or for any hazardous purpose.

Being the same premises conveyed in the deed from the City of Boston to Fresnel Jean-Georges recorded with the Suffolk Registry of Deeds on June 20, 1996 at Book 20655, Page 244.

The premises is conveyed subject to and with the benefit of easements, restrictions, agreements and reservations of record, if there are any, insofar as the same may be in force and applicable.

**EXHIBIT A**

**94 GEORGE STREET, ROXBURY, MA**

That certain parcel of land situated in that part of Boston formerly Roxbury in the County of Suffolk and the Commonwealth of Massachusetts, bounded and described as follows:

| | |
|---|---|
| SOUTHWESTERLY | by the Northeasterly line of George Street, twenty nine and 50/100 (29.50) feet; |
| NORTHWESTERLY | fifty-two and 96/100 (52.96) feet, and |
| SOUTHWESTERLY | forty and 52/100 (40.52) feet by land now or formerly of Teodolinda Pallodino; |
| NORTHWESTERLY | by lands now or formerly of John F. Dimmock and of Joan Altavilla, Trustee, fifty-five and 57/100 (55.57) feet; |
| NORTHEASTERLY | one hundred three and 72/100 (103.72) feet, and |
| SOUTHEASTERLY | twenty-seven and 05/100 (27.05) feet by land now or formerly of the City of Boston; and |
| SOUTHWESTERLY | thirty-one and 48/100 (31.48) feet, and |
| SOUTHEASTERLY | seventy and 63/100 (70.63) feet by land now or formerly of Donato Palvere et al. |

All of said boundaries are determined by the Court to be located as shown on a plan drawn by S. Albert Kaufman, Surveyor, dated August 17, 1950, as modified and approved by the Court, filed in the Land Registration Office as plan No. 22852-A, a copy of a portion of which is filed with Certificate of Title No. 57384.

Being the same premises described in Certificate of Title No. 99964. For Title reference see Document No. 440725.

*Property Address: 94 George Street, Roxbury, MA*