Michael David Scott-93357-038

Federal Medical Center

PO Box 879

Ayer MA, 01432

RECEIVED

2019 SEP 24 A 10:48

CLERK
U.S. BANKRUPTCY COURT
PITTSBURGH

United States Bankruptcy Court

5414 U.S. Steel Tower

600 Grant Street

Pittsburgh, PA 15219


September 18, 2019


## SUPPLEMENTAL AUTHORITY


Dear Clerk;

The enclosed case, In re Hayes, 393 B.R. 259 Bankr. LEXIS 2191 (D.MASS. 2008). could be helpful, as it concerns the issue(s) remaining in the Debtor's bankruptcy case and the adversary proceedings, 17-70045-JAD and 17-07028, respectively.

In re Hayes, Deutsche bank was neither the seller nor the depositor to the Pooling and Servicing Agreement "PSA" and as a result, the court determined that Deutsche bank did not have standing to pursue a foreclosure against the Debtor's property.

In the Debtor's case, US bank is neither the Depositor nor the

Seller to the PSA, however, US bank brought and action in Scott's bankruptcy case, asking for relief form the automatic stay. The court suspended the relief it granted based on US Bank's lack of standing to foreclose on the Debtor's property.

The Debtor filed and adversary, stating that US bank was not the holder of the note, and therefore was not allowed to foreclose or proceed with any other action against the Debtor or the Debtor's property.

US Bank filed an unsigned letter stating that the Debtor's loan was sold to DLJ who is the Depositor in the PSA. The letter is cleary barred by the Statute's of Fraud, M.G.L 259 sec. 1 and therefore is of no relevance, as it does not provide any lawful proof that the Debtor's loan is part of the PSA.

It boils down to the fact that the Trustee has no standing to pursue any claims aganist the Debtor or the Debtor's property.

Respectfully,

*[signature]*

Michael D. Scott

cc: Brett Messinger-Counsel to US Bank.

> In re ROBIN HAYES, Debtor
> UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MASSACHUSETTS
> 393 B.R. 259; 2008 Bankr. LEXIS 2191; 60 Collier Bankr. Cas. 2d (MB) 212
> Chapter 13, Case No. 07-13967-JNF
> August 19, 2008, Decided

**Counsel**     For Robin Hayes, Brockton, MA, Debtor: David G. Baker, Boston, MA.
Assistant U.S. Trustee: John Fitzgerald, Office of the US Trustee, Boston, MA.
Trustee: Carolyn Bankowski-13, Chapter 13 Trustee Boston, Boston, MA.

**Judges:** Joan N. Feeney, United States Bankruptcy Judge.

## CASE SUMMARY

**PROCEDURAL POSTURE:** A Chapter 13 debtor objected to a bank's motion for relief from the automatic stay under 11 U.S.C.S. § 362(d)(1) and (2) and to a proof of claim filed by the servicer of a lender's mortgage for the principal loan balance, the debtor's delinquent mortgage payments, late fees, and attorneys' fees. Bank did not have party in interest standing to obtain relief from automatic stay under 11 U.S.C.S. § 362 and defend Chapter 13 debtor's objection to mortgage servicer's claim because bank failed to prove that a lender, original holder, assigned mortgage to it or, by limited power of attorney, empowered lending company to transfer mortgage to bank.

**OVERVIEW:** The debtor objected to the bank's motion for relief from the stay. The court found that the bank failed to trace the mortgage from the lender, the original holder, to itself and, thus, did not have party in interest standing to obtain relief from the stay and defend the debtor's objection to the servicer's claim. The bank failed to prove that the lender, which was not a party to a pooling and service agreement (PSA), assigned the mortgage to it, the servicer, or a depositor under the PSA or that the lender's grant of authority to a lending company under a limited power of attorney was sufficient to empower the company to execute a confirmatory corporation assignment to transfer the mortgage to the bank. The court sustained the debtor's objection to the servicer's proof of claim, which did not comply with Fed. R. Bankr. P. 3001(c) and (d), because the exhibits including the note and mortgage were not attached and the transfer of the claim to the lending company under the PSA was insufficient to trace the claim from the lender to the lender's servicer and from the servicer to the entity who sold the certificates backed by mortgages to the bank pursuant to the PSA.

**OUTCOME:** The court denied the motion for relief from the stay. The court sustained the debtor's objection to the proof of claim without prejudice to reconsideration upon the filing of an amended proof of claim by the proper party. The court deferred issues relating to lien avoidance pending submission of an amended claim or the filing of an amended plan.

**LexisNexis Headnotes**

*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > Procedures*

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

The plain language of 11 U.S.C.S. § 362 of the Bankruptcy Code requires that one be a party in interest to seek relief from stay.

*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > Procedures*

Relief from stay hearings should not involve a full adjudication on the merits of claims, defenses, or counterclaims, but rather should involve a determination of whether a creditor has a colorable claim to property of the estate.

*Civil Procedure > Justiciability > Standing > General Overview*

Standing is a threshold question in every federal case, determining the power of the court to entertain the suit. Hence, a defect in standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent.

*Civil Procedure > Justiciability > Standing > Burdens of Proof*
*Constitutional Law > The Judiciary > Case or Controversy > Standing > Elements*

The inquiry into standing involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Art. III. Apart from this minimum constitutional mandate, the United States Supreme Court recognizes other limits on the class of persons who may invoke the courts' decisional remedial powers. These prudential limitations are self-imposed rules of judicial restraint: These considerations, which militate against standing, principally concern whether the litigant (1) asserts the rights and interests of a third party and not his or her own, (2) presents a claim arguably falling outside the zone of interests protected by the specific law invoked, or (3) advances abstract questions of wide public significance essentially amounting to generalized grievances more appropriately addressed to the representative branches.

*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > Procedures*
*Civil Procedure > Justiciability > Standing > Burdens of Proof*

To have standing to seek relief from the automatic stay, a party is required to establish that it is a party in interest and that it is asserting its rights and not those of another entity. Party in interest standing does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding.

*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > Procedures*
*Civil Procedure > Justiciability > Standing > General Overview*

Mortgage servicers are parties in interest with standing to seek relief from the automatic stay by virtue of their pecuniary interest in collecting payments under the terms of the notes and mortgages they service.

*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > General Overview*
*Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > General Overview*

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*Real Property Law > Financing > Mortgages & Other Security Instruments > Transfers > General Overview*

Under Massachusetts law, a mortgage is an interest in real estate and an assignment is a conveyance of that legal estate in the mortgaged premises. An assignment need not be recorded. The mortgagee or person having his or her estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal or person acting in the name of such mortgagee or person, may, upon breach of condition and without action, do all the acts authorized or required by the power. Mass. Gen. Laws ch. 244, § 14. Thus, a mortgagee or an entity with a valid assignment may foreclose on real estate in Massachusetts and seek relief from the automatic stay to do so.

*Real Property Law > Financing > Mortgages & Other Security Instruments > Transfers > General Overview*

A title is not defective by reason of the recording of an assignment of mortgage executed either prior, or subsequent, to foreclosure where said mortgage has been foreclosed, of record by the assignee.

*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > Procedures*
*Bankruptcy Law > Claims > Objections*
*Civil Procedure > Justiciability > Standing > Burdens of Proof*

The court and the debtor are entitled to insist that the moving party establish its standing in a motion for relief from stay through the submission of an accurate history of the chain of ownership of the mortgage. Absent such proof, relief from stay is unwarranted and a proof of claim filed by the wrong party, to which an objection is filed, must be disallowed.

*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > Procedures*
*Bankruptcy Law > Practice & Proceedings > Professional Responsibility*
*Civil Procedure > Sanctions > Misconduct & Unethical Behavior > Misrepresentations*

Bankr. D. Mass. R. 4001-1(b)(2)(F) requires a movant to state the original holder of the obligations secured by the security interest and/or mortgage and every subsequent transferee, if known to the movant, and whether the movant is holder of that obligation or an agent of the holder. Inaccurate representations about the moving party's status as a holder may constitute a violation of Fed. R. Bankr. P. 9011 and may warrant sanctions under 28 U.S.C.S. § 1927.

*Bankruptcy Law > Claims > Proof > Content, Evidence & Form*

See Fed. R. Bankr. P. 3001(f).

*Bankruptcy Law > Claims > Proof > Content, Evidence & Form*

In order to rebut the prima facie evidence, the objecting party must produce "substantial evidence," and, if the objecting party produces substantial evidence in opposition to the proof of claim, rebutting the prima facie evidence, the burden shifts to the claimant to establish the validity of its claim.

*Civil Procedure > Justiciability > Standing > General Overview*
*Real Property Law > Financing > Mortgages & Other Security Instruments > General Overview*

Those parties who do not hold the note or mortgage and who do not service the mortgage do not have

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

standing to pursue motions for relief or other actions arising from the mortgage obligation. A servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer.

Opinion

**Opinion by:**     Joan N. Feeney

Opinion

{393 B.R. 261} MEMORANDUM

I. INTRODUCTION

Two matters are before the Court: 1) the First Omnibus Objection to Claims filed by the Debtor, Robin **Hayes** (the "Debtor"), pursuant to which the Debtor objected to a proof of claim filed by AMC Mortgage Services, Inc. ("AMC"); and 2) the Motion for Relief from Stay filed by Deutsche Bank National Trust Company, as Trustee of Argent Mortgage Securities, Inc. [sic] Asset-Backed Pass Through Certificates Series 2004-W11, under the Pooling and Servicing Agreement Dated as of October 1, 2004, without Recourse ("Deutsche Bank"), filed on September 17, 2007. 1 AMC, on November 6, 2007, filed a Response to the Debtor's Objection to the proof of claim which AMC subsequently purported to transfer to a servicer of Deutsche Bank. 2 In her Objection to the proof of claim filed by AMC, the Debtor noted the absence of evidence of an assignment from the original holder of her mortgage. The Debtor filed an Objection to Deutsche Bank's Motion for Relief from the Automatic Stay. In her Objection to Deutsche Bank's Motion for Relief from Stay, the Debtor raised an issue of Deutsche Bank's standing to seek relief from stay.

On July 14, 2008 and July 15, 2008, the Court conducted a consolidated evidentiary hearing on the Debtor's Objection to Claim, and Deutsche Bank's Motion for Relief from Stay. Three witnesses testified and 20 exhibits were introduced into evidence. The threshold issue is whether Deutsche Bank has standing to seek relief from the automatic stay and to oppose the Debtor's Objection to the proof of claim filed by AMC. The specific issue is whether Deutsche Bank successfully traced the identity of the various holders and servicers of the mortgage from Argent Mortgage Company, LLC, the original holder of a mortgage executed by the Debtor and Tina **Hayes**, to itself. For the reasons set forth below, the Court finds that Deutsche Bank failed to trace the mortgage from Argent Mortgage Company, LLC to itself and thus lacks standing to obtain relief from stay and to defend the Debtor's Objection to the claim filed by AMC.

II. FACTS

The Debtor filed a voluntary Chapter 13 petition on June 26, 2007, her third Chapter 13 petition since May of 2006, and the sixth involving real property located at 232 Perkins Avenue, Brockton, Massachusetts (the "Perkins Avenue property"), which the Debtor owns as a joint tenant with her mother, Tina **Hayes**. 3 The Perkins Avenue {393 B.R. 262} property is encumbered by a mortgage dated November 3, 2004 (Exhibit 1), which secures an adjustable rate note of even date in the original principal amount of $ 324,000 (Exhibit 2). Only Tina **Hayes** executed the adjustable rate note; both she and the Debtor executed the mortgage.

The note and mortgage identify Argent Mortgage Company, LLC as the Lender. The note sets forth

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

an initial monthly payment amount of $ 2,514.28 and provides for an adjustment of the initial 8.6% interest rate on December 1, 2006 and every six months thereafter based upon the LIBOR index. The note provides:

> [T]he Note Holder will calculate my new interest rate by adding six percentage point(s)(6.000%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight [sic] of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at the new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.The note further provides that the interest rate was subject to a cap of 10.600% and a floor of 8.6% at the first Change Date and that, after first Change Date, it would never increase or decrease more than 1.000% from the rate payable for the previous six months, subject to an overall ceiling of 14.6% and floor of 8.6%. The note also provides for late charges and attorneys' fees.

The mortgage contains additional pertinent provisions. It provides:

> Lender [Argent Mortgage Company, LLC] may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payment in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current . . . .Further, the mortgage permits the Lender to obtain property insurance in the event the Borrower failed to maintain insurance coverage or perform obligations under the note and mortgage, as well as to take actions to protect its interest, including assessing the value of the property, appearing in court and paying reasonable attorneys' fees.

As noted above, AMC, not Argent Mortgage Company, LLC, filed a proof of claim on August 13, 2007 "as loan servicer for Secured Creditor Argent Mortgage Company, LLC" (Exhibit 8). It set forth a pre-petition secured claim in the total amount of $ 398,099.18, comprised of the principal loan balance of $ 322,422.61, plus twenty-one delinquent monthly mortgage payments, 4 late fees, attorneys' fees, and {393 B.R. 263} other costs and charges, totaling $ 75,676.57.

The Debtor objected to the proof of claim on grounds that AMC failed to attach "a copy of the note and mortgage (and any related assignments)" and that its costs and charges were unreasonable and excessive in the absence of documentation. Additionally, the Debtor complained that she could not verify that twenty-two payments were in arrears without a complete loan history. She asked that "[a]bsent appropriate documentation . . . the claim be disallowed and the security interest voided pursuant to 11 USC § 506(d)."

AMC responded to the Debtor's Objection "as servicer to the holder of the mortgage." It attached to its Response a copy of the note and mortgage, as well as a loan history. On April 29, 2008, almost 16 months after AMC filed a proof of claim on behalf of Argent Mortgage Company, LLC, an attorney with the law firm of Buchalter Nemer filed with the Court a "Transfer of Claim Other Than for Security" (Exhibit 18), dated April 8, 2008, pursuant to which AMC purported to transfer the proof of claim it filed on behalf of Argent Mortgage Company, LLC to Citi Residential Lending, Inc., as loan servicer for the secured creditor Deutsche Bank National Trust Company, as Trustee, in trust for the registered holders of Argent Securities Inc."

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

On September 17, 2007, approximately three months after the Debtor filed her Chapter 13 petition, Deutsche Bank filed its Motion for Relief from Stay under 11 U.S.C. § 362(d)(1) and (d)(2), as Trustee of Argent Mortgage Securities, Inc. [sic]. In its Motion, it alleged that it is the current holder of the mortgage, that the Debtor failed to stay current with post-petition mortgage payments, that the Debtor had little, if any equity in the Perkins Avenue property, and that the property was unnecessary for an effective reorganization. The Debtor filed a timely Objection to Deutsche Bank's Motion asserting that she lacked knowledge or information sufficient to respond to Deutsche Bank's allegation that she had failed to make post-petition mortgage payments and, as noted above, raising the issue of Deutsche Bank's standing to bring the Motion.

At trial, Deutsche Bank, through Andrea Rodriguez-Tapia, a bankruptcy specialist and so-called "team lead," with Citi Residential Lending, Inc., introduced multiple documents in support of its standing to bring its Motion for Relief from Stay and respond to the Debtor's objection to the proof of claim filed by AMC. In addition to the note, mortgage and Transfer of Claim (Exhibits 1, 2 and 18, respectively), Deutsche Bank introduced the following exhibits in support of its standing:

1) a "Confirmatory Corporation Assignment of Deed of Trust Mortgage" (Exhibit 3) pursuant to which Argent Mortgage Company, LLC, "[b]y its Attorney In-Fact, Citi Residential Lending, Inc.," by Tamara Price, Vice President, purported to assign and transfer to "Deutsche Bank National Trust Company as Trustee of Argent Mortgage Securities, Inc. [sic], Asset-Backed Pass Through Certificates Series 2004-W11, under the Pooling and Servicing Agreement dated as of October 1, 2004 Without Recourse. . . ." all beneficial interest under that certain mortgage dated November 3, 2004 executed by Tina **Hayes** aka Tena **Hayes** and Robin **Hayes**" with {393 **B.R.** 264} respect to the Perkins Avenue property. The assignment was dated April 16, 2008, but it provided that "[t]he effective date of this assignment is October 24, 2005." 5

2) a "Limited Power of Attorney" (Exhibit 4) given by Argent Mortgage Company L.L.C. to Citi Residential Lending, Inc., dated September 6, 2007, pursuant to which Argent Mortgage Company LLC granted Citi Residential Lending, Inc. "full power and authority to sign, execute, . . . and record any instrument on its behalf and to perform such other act or acts as may be customarily and reasonably necessary and appropriate to effectuate the following enumerated transactions. . . ." The Limited Power of Attorney further provides: "This Appointment shall apply only to the following enumerated transactions and nothing herein or in the Agreements shall be construed to the contrary:

3) a "POOLING AND SERVICING AGREEMENT, dated as of October 1, 2004," among "ARGENT SECURITIES INC., Depositor," "AMERIQUEST MORTGAGE COMPANY, Master Servicer," and "DEUTSCHE BANK NATIONAL TRUST COMPANY, Trustee." (Exhibit 6). The title page contains a reference "Asset-Backed Pass-Through Certificates Series 2004-W11." The agreement was signed by all three parties and their signatures were notarized on October 6 and 7, 2004. In the Preliminary Statement of the Pooling and Servicing Agreement ("PSA"), the parties agreed that "[t]he Depositor intends to sell pass-through certificates . . . to be issued hereunder in multiple classes which in the aggregate will evidence the entire beneficial ownership in each REMIC created hereunder." The term REMIC is defined as a "real estate mortgage investment conduit within the meaning of Section 860D of the Code [the Internal Revenue Code of 1986, as amended]."

The PSA contains a reference to a Schedule 1, a "Mortgage Loan Schedule," which was not attached to Exhibit 6. However, in Section 1.01 "Definitions," at p. 35, the term "Mortgage Loan" is defined as "[e]ach mortgage loan transferred and assigned to the Trustee pursuant to Section 2.01 or Section 2.03(d) of this Agreement or pursuant to a Subsequent Transfer Instrument, as

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

held from time to time as part of REMIC I, the Mortgage Loans so held being identified in the Mortgage Loan Schedule." The "Mortgage Loan Schedule" is defined as follows: "As of any date, the list of Mortgage Loans included in REMIC I on such date . . . attached hereto as Schedule I and as supplemented by each schedule of Subsequent Mortgage Loans attached to the Subsequent Transfer Instrument." On p. 65, the term, "Subsequent Mortgage Loan," is defined as "[a] Mortgage Loan sold by the Depositor to the Trust Fund pursuant to Section 2.09, such Mortgage Loan being identified on the Mortgage Loan Schedule attached to a Subsequent Transfer Instrument." Section 2.01, entitled "Conveyance of Mortgage Loans," provides that "[t]he Depositor . . . convey[s] to the Trustee, without recourse, for the benefit of the Certificateholders [sic] and Certificate Insurer, all right title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in and to the Mortgage Loans identified on the Mortgage Schedule. . . ." Section 2.09 entitled "Conveyance of the Subsequent Mortgage Loans," provides that "the Depositor shall on any Subsequent Transfer Date sell, transfer, assign, set over and convey without recourse to the Trustee for the benefit of the Trust Fund . . . all right, title and interest of the Depositor in and to (i) the Subsequent Mortgage Loans identified on the Mortgage Loan Schedule attached to the related Subsequent Transfer Instrument delivered by the Depositor on such Subsequent {393 B.R. 266} Transfer Date. . . ." 7

1. The modification or **re**-recording of a Mortgage or Deed of Trust, where said modification or **re**-recording is solely for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors . . . .

2. The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain . . . .

3. The conveyance of the properties [sic] to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

4. The completion of loan assumption agreements.

5. The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including without limitation, cancellation of the related Mortgage Note.

6. The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

7. The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

8. With respect to a Mortgage or Deed of Trust, the foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or termination, cancellation or rescission of any such foreclosure . . . .

9. With respect to the sale of property acquired through a foreclosure or deed-in-lieu of foreclosure, including, without limitation, the execution of the following documentation:

a. Listing agreements . . . .

10. The modification or amendment of escrow agreements established for repairs to the mortgaged property {393 B.R. 265} or reserves for replacement of personal property.

11. Endorse on behalf of Argent Mortgage all checks, drafts and/or negotiable instruments made

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

payable to Argent Mortgage." 6

Rodriguez-Tapia testified that Argent Mortgage Company, LLC and Ameriquest Mortgage Company are affiliated companies, that Ameriquest Mortgage Company created AMC to service loans, that Citi Residential Lending, Inc. purchased AMC's loan servicing portfolio, and that Citi Residential Lending, Inc. is the current servicer of the mortgage on the Perkins Avenue property. 8

### III. DISCUSSION

A. Standing

As the Court noted in In re Maisel, 378 B.R. 19, 21 (Bankr. D. Mass. 2007), "[t]he plain language of section 362 of the Bankruptcy Code requires that one be a 'party in interest' to seek relief from stay." Although the United States Court of Appeals for the First Circuit in Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 32 (1st Cir. 1994), determined that relief from stay hearings should not involve a full adjudication on the merits of claims, defenses, or counterclaims, but rather should involve a determination of "whether a creditor has a colorable claim to property of the estate," this Court must ensure that Deutsche Bank is, in fact, a party in interest with standing to bring the Motion for Relief from Stay now before the Court.

As noted by this Court in In re Shamus Holdings, LLC, No. 08-1030-JNF, 2008 Bankr. LEXIS 2294, 2008 WL 3191315 (Bankr. D. Mass. Aug. 6, 2008), the United States Bankruptcy Appellate Panel for the First Circuit in In re Newcare Health Corp., 244 B.R. 167 (B.A.P. 1st Cir. 2000), addressed the concept of standing in connection with a request for an accounting and turnover by a party that asserted a security interest in property belonging, not to the debtor, but to an affiliate of the debtor. It observed the following:

> Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). Hence, "a defect in standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent." U.S. v. AVX Corp., 962 F.2d 108, 116 n. 7 (1st Cir.1992).

> The inquiry into standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth, 422 U.S. at 498, 95 S. Ct. 2197. "In its constitutional dimension, standing {393 B.R. 267} imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." Id. Apart from this minimum constitutional mandate, the Supreme Court recognizes other limits ". . . on the class of persons who may invoke the courts' decisional remedial powers." Id. at 499, 95 S. Ct. 2197. These prudential limitations are self-imposed rules of judicial restraint:

> These considerations, which militate against standing, principally concern whether the litigant (1) *asserts the rights and interests of a third party and not his or her own,* (2) presents a claim arguably falling outside the zone of interests protected by the specific law invoked, or (3) advances abstract questions of wide public significance essentially amounting to generalized grievances more appropriately addressed to the representative branches. Shamus Holdings, 2008 Bankr. LEXIS 2294, at *16 (citing Newcare, 244 B.R. at 170)(emphasis in original).

To have standing to seek relief from the automatic stay, Deutsche Bank was required to establish that it is a party in interest and that it is asserting its rights and not those of another entity. In In re Woodberry, 383 B.R. 373 (Bankr. D. S.C. 2008), the court observed:

> "Generally, the 'real party in interest' is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." In re Comcoach Corp., 698 F.2d 571, 573 (2nd Cir.1983) (citations omitted). While Comcoach has

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

been criticized as unduly restrictive in the interpretation of "party in interest", its general principle that "party in interest standing does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding" survives. In re Refco, 505 F.3d 109, 115 fn. 10 (2nd Cir.2007).Woodberry, 383 B.R. at 379. Courts have held that mortgage servicers are parties in interest with standing by virtue of their pecuniary interest in collecting payments under the terms of the notes and mortgages they service. 383 B.R. at 379. See also In re Conde-Dedonato, 391 B.R. 247, 2008 Bankr. LEXIS 2013, 2008 WL 2873356 at *2 (Bankr. E.D.N.Y. July 22, 2008) ("A servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer.").

Under Massachusetts law, a mortgage is an interest in real estate and an assignment is a conveyance of that legal estate in the mortgaged premises. An assignment need not be recorded. *See generally* Arthur L. Eno, Jr. and William V. Hovey, Assignment of Mortgage, 28 Mass. Prac., Real Estate Law, § 9.49 (4th ed.). "The mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal . . . or person acting in the name of such mortgagee or person, may, upon breach of condition and without action, do all the acts authorized or required by the power . . . ." Mass. Gen. Laws ch. 244, § 14. See In re Huggins, 357 B.R. 180 (Bankr. D. Mass. 2006). Thus, a mortgagee or an entity with a valid assignment may foreclose on real estate in Massachusetts and seek relief from the automatic stay to do so. Moreover, a title is not defective "by reason of: . . . [t]he recording of an Assignment of Mortgage executed either prior, or subsequent, to foreclosure where said Mortgage has been foreclosed, of record by the Assignee." {393 B.R. 268} 28B Mass. Prac. Series REBA Tit. Std. No. 58.

B. <u>Deutsche Bank's Motion for Relief from Stay</u>

The foregoing provisions of Massachusetts law do not assist Deutsche Bank or establish its standing to file the Motion for Relief from Stay which is now before the Court. In this case, Deutsche Bank filed its Motion for Relief from Stay, as Trustee of Argent Mortgage Securities, Inc. [sic], an entity which was not a party to the PSA. It failed to prove that the mortgage executed by the Debtor and her mother in favor of Argent Mortgage Company, LLC was ever assigned to an entity by that name or to Argent Securities Inc., the Depositor under the PSA. The Confirmatory Corporation Assignment of Deed of Trust/Mortgage, dated April 16, 2008 (Exhibit 3), which was executed some seven months after the filing of the Motion for Relief from Stay, pursuant to which Argent Mortgage Company, LLC conveyed the mortgage on the Perkins Avenue property to Deutsche Bank was ineffective because Citi Residential Lending, Inc. lacked authority under the Limited Power or Attorney to assign the mortgage to Deutsche Bank on behalf of Argent Mortgage Company, LLC. Moreover, Deutsche Bank failed to submit any evidence that the November 3, 2004 mortgage was included in the PSA or was subject to Section 2.09 of the PSA as neither Schedule 1 to the PSA nor a Mortgage Loan Schedule attached to a Subsequent Transfer Instrument were submitted into evidence. Thus, consistent with the holdings in In re Maisel, 378 B.R. at 22, and In re Parrish, 326 B.R. 708, 720 (Bankr. N.D. Ohio 2005), the Court finds that Deutsche Bank failed to adequately trace the loan from the original holder, Argent Mortgage Company, LLC, to it. See also In re Foreclosure Cases, No. 1:07CV2282, 2007 U.S. Dist. LEXIS 84011, 2007 WL 3232430 (N.D. Ohio Oct. 31, 2007). Additionally, the Debtor's reference to Deutsche Bank as a secured creditor in several of her proposed Chapter 13 plans cannot confer standing on it as a party in interest for purposes of its Motion for Relief from Stay. See In re Newcare Health Corp., 244 B.R. at 170 ("'a defect in standing cannot be waived.'").

In In re Schwartz, 366 B.R. 265 (Bankr. D. Mass. 2007), the court observed:

> [I]t is not uncommon for notes and mortgages to be assigned, often more than once. When the

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

role of a servicing agent acting on behalf of a mortgagee is thrown into the mix, it is no wonder that it is often difficult for unsophisticated borrowers to be certain of the identity of their lenders and mortgagees.Id. at 266. In In re Nosek, 386 B.R. 374, 380 (Bankr. D. Mass. 2008), a case involving Ameriquest Mortgage Company, an affiliate of Argent Mortgage Company, LLC and AMC, the court again chronicled the "the confusion and lack of knowledge, or perhaps sloppiness" which characterize practices in the residential mortgage industry, in particular, the failure by mortgage companies to document their standing. The court observed the following:

> . . . "[M]istakes" and misrepresentations . . . [are not] . . . limited to the identification of roles played by various entities in this industry. In re Schuessler, 386 B.R. 458, 2008 WL 1747935, *3 (Bankr.S.D.N.Y.2008) (movant's motion misrepresented debtor's equity); Porter, Katherine M., "Misbehavior and Mistake in Bankruptcy Mortgage Claims" (November 6, 2007).University of Iowa Legal Studies Research Paper No. 07-29. Available at SSRN: http://ssrn.com/abstract=1027961. As this Court has noted on more than one occasion, those parties who do not hold the note or {393 B.R. 269} mortgage and who do not service the mortgage do not have standing to pursue motions for relief or other actions arising from the mortgage obligation. Schwartz, 366 B.R. at 270. The Court has had to expend time and resources, as have debtors already burdened in their attempts to pay their mortgages, because of the carelessness of those in the residential mortgage industry and the bombast this Court and others have encountered when calling them on their shortcomings. In re Foreclosure Cases, 2007 U.S. Dist. LEXIS 84011, 2007 WL 3232430 at *3, n. 1.Nosek, 386 B.R. at 380.

Although courts have been addressing the issues raised by Bankruptcy Judge Rosenthal in the Nosek case for some time, see In re Foreclosure Cases, No. 1:07CV2282, 2007 U.S. Dist. LEXIS 84011, 2007 WL 3232430 (N.D. Ohio Oct. 31, 2007), problems associated with the practices are amplified in the instant case. The mortgage lender, its affiliates, assignees, and agents involved in this case, through the convoluted process of securitization, the submission of a 191-page, incomplete PSA, and reliance upon back-dated, unrecorded assignments, have confounded the identity of the current holder of the mortgage for the purpose of filing the Motion for Relief from Stay, as well as the proof of claim. The Court and the Debtor are entitled to insist that the moving party establish its standing in a motion for relief from stay through the submission of an accurate history of the chain of ownership of the mortgage. Absent such proof, relief from stay is unwarranted and a proof of claim filed by the wrong party, to which an objection is filed, must be disallowed.

Massachusetts Local Bankruptcy Rule 4001-1(b)(f) *requires* a movant to state "the original holder of the obligations secured by the security interest and/or mortgage and every subsequent transferee, if known to the movant, and whether the movant is holder of that obligation or an agent of the holder. . . ." Inaccurate representations about the moving party's status as a holder may constitute a violation of Fed. R. Bankr. P. 9011 and may warrant sanctions under 28 U.S.C. § 1927. Given the tangle of inconsistent and incomplete documents introduced into evidence purporting to establish Deutsche Bank as the holder of the Debtor's mortgage, which were submitted during a two day trial and required intensive scrutiny of hundreds of pages of documents, sanctions may be appropriate. *See* In re Nosek, 386 B.R. 374 (Bankr. D. Mass. 2008).

C. The Proof of Claim

Pursuant to Fed. R. Bankr. P. 3001(f), "[a] proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and amount of the claim." *See* In re Long, 353 B.R. 1, 13 (Bankr. D. Mass. 2006). *See also* Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir.1993). In order to rebut the prima facie evidence, the objecting party must produce "substantial evidence," and, if the objecting

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

party produces substantial evidence in opposition to the proof of claim, rebutting the prima facie evidence, the burden shifts to the claimant to establish the validity of its claim. Long, 353 B.R. at 13 (citations omitted).

The proof of claim filed by AMC did not initially comply with Fed. R. Bankr. P. 3001(c) and (d), although it contained a reference to a "Summary of Exhibits," including the note, mortgage and "Certificate of Assistant Secretary," which exhibits were not attached. The Debtor objected to the claim, raising an issue Under Rule 3001(c) and (d). Accordingly, AMC had the burden of establishing the {393 B.R. 270} validity of the claim it filed - - a burden assumed, *sub silentio,* by Deutsche Bank. Deutsche Bank submitted no evidence that Argent Mortgage Company, LLC executed a servicing agreement with AMC, although Rodriguez-Tapia testified that Ameriquest Mortgage Company created AMC to service its loans. Accordingly, the transfer of the claim by AMC to Citi Residential Lending, Inc. as loan servicer for Deutsche Bank under the PSA was insufficient for this Court to trace the claim from Argent Mortgage Company, LLC to AMC and from AMC to Argent Securities Inc. who sold the certificates backed by mortgages to Deutsche Bank pursuant to the PSA.

## IV. CONCLUSION

As noted above, Deutsche Bank failed to establish that Argent Mortgage Company, LLC effectively assigned the mortgage executed by the Debtor to it or that Argent Mortgage Company, LLC's grant of authority to Citi Residential Lending, Inc. under the Limited Power of Attorney (Exhibit 4) was sufficient to empower Citi Residential Lending, Inc. to execute the Confirmatory Corporation Assignment, dated April 16, 2008, on its behalf, so as to effectively transfer the mortgage on the Perkins Avenue property from Argent Mortgage Company, LLC to Deutsche Bank. Moreover, Argent Mortgage Company, LLC was not a party to the PSA and Deutsche Bank failed to submit evidence that Argent Mortgage Company, LLC ever conveyed its rights in and to the mortgage on the Perkins Avenue property to Argent Securities Inc.

As the court noted in In re Nosek, 386 B.R. 374, 380 (Bankr. D. Mass. 2008), "those parties who do not hold the note or mortgage and who do not service the mortgage do not have standing to pursue motions for relief or other actions arising from the mortgage obligation." Id. at 380 (citing In re Schwartz, 366 B.R. at 270). Because Deutsche Bank has failed to establish its standing to seek relief from the automatic stay and to defend the Debtor's Objection to the proof of claim filed by AMC, the Court shall enter an order denying Deutsche Bank's Motion for Relief from Stay. The Court shall also enter an order sustaining the Debtor's Objection to the proof of claim without prejudice to reconsideration under 11 U.S.C. § 502(j) upon the filing of an amended proof of claim by the proper party. *See also* Fed. R. Bankr. P. 3008. The Court shall defer issues relating to lien avoidance pending submission of an amended claim or the filing of an amended plan. 9

The Court shall enter orders consistent with the foregoing rulings.

By the Court,

/s/ Joan N. Feeney

Joan N. Feeney

United States Bankruptcy Judge

Dated: August 19, 2008

## Footnotes

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

1

As discussed below, Deutsche Bank is a party to a Pooling and Service Agreement, dated as of October 1, 2004. The Depositor under the Pooling and Service Agreement, namely the seller of pass-through certificates reflecting beneficial ownership interests in certain real estate mortgage investment conduits, is Argent Securities Inc., not Argent Mortgage Securities, Inc. Under the Pooling and Service Agreement, the Trustee of the Trust Fund, consisting of a segregated pool of assets comprised of mortgage loans and certain other related assets, is Deutsche Bank National Trust Company. Deutsche Bank erroneously identified itself in its own Motion.

2

In its Response, AMC identified itself as the servicer for the holder of the mortgage on 232 Perkins Avenue, Brockton, Massachusetts owned by the Debtor and her mother, Tina Hayes. It did not, however, specifically identify the holder of the mortgage. In the Motion for Relief from Stay filed approximately two months earlier, Deutsche Bank identified itself as the holder of the mortgage.

3

The Court takes judicial notice that the Debtor filed Case No. 06-11255-JNF on May 3, 2006, and Case No. 06-12851-JNF on August 23, 2006. Her mother, Tina Hayes, filed Case No. 06-10565-WCH on March 13, 2006, Case No. 06-11599-RS on May 30, 2006, and Case No. 06-13311-WCH on September 22, 2006.

4

The delinquent payments were set forth as follows: sixteen payments at $ 2,514.28 each for the period September 1, 2005 through December 1, 2006; five payments at $ 2,972.50 each for the period January 1, 2007 through May 1, 2007; and one payment at $ 3,199.25 for June 1, 2007. The late fees ($ 1,741.96), property inspection fees ($ 327.00), foreclosure fees and costs ($ 10,947.96), appraisal fees ($ 535), bankruptcy attorneys' fees ($ 1,334.42), bankruptcy costs ($ 300), and foreclosure attorneys' fees ($ 2,200) totaled $ 17,386.34.

5

Deutsche Bank also introduced as Exhibit 5 an "Incumbency Certificate," dated October 23, 2007, executed by Kathleen Wood-Wagner, the Secretary of Citi Residential Lending, Inc., purportedly attesting to Tamara Price's authority to execute the Confirmatory Corporation Assignment. It did not submit evidence that Tamara Price retained that authority after October 23, 2007. Thus, it unclear whether she retained that authority on April 16, 2008, the date she executed the Confirmatory Corporation Assignment.

6

The limited nature of the power of attorney is further emphasized in the document, which provides "[T]his appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and is not to be construed as a general power of attorney."

7

Deutsche Bank noted that Argent Mortgage Company, LLC was identified as an "Originator" in the PSA. *See* Exhibit 6 at p. 41, not p. 44 as cited by Deutsche Bank. Deutsche Bank failed to explain the relationship between Argent Securities Inc. and Argent Mortgage Company, LLC, in its capacity as an originator, and Argent Securities Inc.'s ownership of pass-through certificates backed by the mortgage originated by Argent Mortgage Company, LLC remains unclear. Deutsche Bank failed in its burden to explain the relationship and how it affects its standing.

8

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

During final argument by Debtor's counsel, after both parties had rested and the evidence was closed, counsel to the Debtor attempted to introduce into evidence two additional documents for the reason that they were attached to a pleading filed by Deutsche Bank, namely: 1) an "Assignment of Mortgage," dated November 3, 2004, pursuant to which Argent Mortgage Company, LLC assigned the mortgage executed by the Debtor and Tina Hayes on that day to Ameriquest Mortgage Company; and 2) a "Corporation Assignment of Deed of Trust/Mortgage," dated February 4, 2008, pursuant to which AMC Mortgage Services, Inc. by its Attorney-in-Fact, Citi Residential Lending, Inc., assigned the mortgage executed by the Debtor and Tina Hayes to Deutsche Bank. The Court sustained Deutsche Bank's objection to the introduction of the documents.
9

In view of the foregoing, the Court need not address issues raised by both parties with respect to the Debtor's burden of establishing the existence of a plan in prospect under 11 U.S.C. § 362(d)(2)(B). The Court notes that the Debtor may have won a battle, but she still may lose the war. The evidence established that the Debtor has made a total of two postpetition mortgage payments in the 14 months her Chapter 13 case has been pending and that she had incurred substantial mortgage arrears at the time of the commencement of her second Chapter 13 case. Although the holder of the mortgage may be in doubt, the Debtor's inadequate income and questionable ability to make mortgage and plan payments from self-employment is not. Outstanding issues remain and include whether the claim securing the Perkins Avenue property can be modified, and whether she can propose a feasible plan. The Court has sustained objections to her First Amended Chapter 13 plan because it had a balloon payment feature. At this time, she does not have a confirmable plan before the Court.

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.