**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 17-70045-JAD |
| | ) | |
| MICHAEL DAVID SCOTT, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Related to Doc. No. 231 |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | X | |
| | ) | |
| MICHAEL DAVID SCOTT, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| U.S. BANK NATIONAL | ) | |
| ASSOCIATION, as Trustee for | ) | |
| Credit Suisse First Boston | ) | |
| Mortgage Securities Corp., | ) | |
| Mortgage-Backed Pass Through | ) | |
| Certificates, Series 2004-AR7, | ) | |
| | ) | |
| Respondent. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | X | |

## MEMORANDUM OPINION

This dispute concerns the request of the Debtor, Michael David Scott (the

"Debtor"), for a stay pending appeal of an order granting the Respondent, U.S.

Bank,[1] relief from the automatic stay as to the Debtor's real property located at

40 Old Stable Drive, Mansfield, Massachusetts 02048 (the "Stable Property").

For the reasons discussed below, the Court denies the Debtor's motion.

---

[1] U.S. Bank National Association, as Trustee for Credit Suisse First Boston
Mortgage Securities Corp., Mortgage-Backed Pass Through Certificates, Series 2004-
AR7 ("U.S. Bank")

# I.
## Background

The factual and procedural history of this bankruptcy case, as well as related adversary proceedings, is set forth in this Court's *Memorandum Opinion* dated September 25, 2019 and filed at consolidated Adversary Proceeding 17-07028-JAD as ECF No. 197. Because this Court writes this Memorandum Opinion primarily for the parties who are familiar with the facts and procedural postures of this case and related proceedings, and given the voluminous record before it, the Court will not set forth a full recounting of the litigation history between the parties. Instead, the Court hereby incorporates the recitation of historical and procedural facts set forth in the September 25, 2019 *Memorandum Opinion.*

The gist of the matter before the Court is as follows: U.S. Bank filed a motion seeking relief from the automatic stay[2] to enforce its averred mortgage lien against the Debtor's interest in the Stable Property. While acknowledging that he executed various loan documents, the Debtor challenged U.S. Bank's standing to enforce the Note[3] secured by the Stable Property and thus,

---

[2] *Motion of U.S. Bank National Association as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage-Backed Pass Through Certificates, Series 2004-AR7 for Relief from the Automatic Stay Under §362 Pursuant to Bankruptcy Procedure Rule 4001* (the "Motion For Relief From Stay"), 17-70045-JAD, ECF No. 106.

[3] The underlying note is the *Adjustable Rate Note* dated April 26, 2004 and executed by the Debtor and his non-debtor spouse, Eunice M. James-Scott, (the "Note"). See Exhibit "A" to the *Defendants U.S. Bank, National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage Pass Through Certificates, Series 2004-AR7 and Ocwen Loan Servicing, LLC's Amended Answer to Debtor's Complaint with Counterclaims* (the "Amended Answer"), 17-07028-JAD, ECF
(… continued)

challenged U.S. Bank's standing to prosecute the Motion For Relief From Stay. After a hearing on the motion, the Court granted U.S. Bank relief from the automatic stay on June 2, 2017 (the "Relief From Stay Order"). The reasoning behind the Court's decision is set forth in the September 25, 2019 *Memorandum Opinion* and incorporated herein.

The Debtor appealed the Court's granting of the Motion For Relief From Stay to the District Court. The Debtor also filed in this Court a *Motion to Stay Execution of Order Lifting Automatic Stay On 40 Old Stable Drive Mansfield MA 02048 Pending the Outcome of Petitioner[']s Appeal* (ECF No. 231) (the "Motion to Stay Pending Appeal").

On June 22, 2017, and with the consent of U.S. Bank, this Court entered an order staying the effectiveness of the Relief From Stay Order until resolution of the Motion to Stay Pending Appeal. See *Order Staying Effectiveness of Order Granting Relief From the Automatic Stay (ECF No. 208) Pending Entry of an Order on Debtor's Motion for Stay Pending Appeal (ECF No. 231),* ECF No. 250.

Overlapping with the relief from stay litigation, the Debtor commenced Adversary Proceeding 17-07028-JAD by which the Debtor again challenged U.S. Bank's standing to enforce the Note and Mortgage, and foreclose on the Stable Property. The commencement of Adversary Proceeding 17-07028-JAD on May 18, 2017 was not brought to this Court's attention prior to or at the

---

(... continued)

No. 101-1. The Note is secured by a *Mortgage* (the "Mortgage") executed that same day by the Debtor and Mrs. James-Scott and identifying the Stable Property as subject to the Mortgage. See Exhibit "B" to the Amended Answer.

June 2, 2017 relief from stay hearing. Subsequently, Adversary Proceeding 17-07050-JAD was also filed, seeking to avoid U.S. Bank's lien due to issues relating to the Note and Mortgage, which was consolidated with Adversary Proceeding 17-07028-JAD.

Given the subject matter of Adversary Proceeding 17-07028-JAD, U.S. Bank voluntarily agreed to stay any foreclosure efforts pending the outcome of that proceeding. Likewise, the District Court stayed the Debtor's appeal pending further order of that court.

By the agreement of the parties, this Court entered an order on September 8, 2017 further staying the effectiveness of the Relief From Stay Order pending the outcome of Adversary Proceeding 17-07028-JAD. See *Order Staying the Court's June 2, 2017 Order Granting U.S. Bank Relief From the Automatic Stay Pending Final Order of this Court Disposing the Merits on Adversary Proceeding No. 17-7028*, ECF No. 384.

The merits of consolidated Adversary Proceeding 17-07028-JAD have since been adjudicated and the Court has entered its *Memorandum Opinion* and *Order* dated September 25, 2019. Accordingly, the Motion to Stay Pending Appeal is ripe for decision.

## II.
## Standard for Analyzing a Request for Stay Pending Appeal

A court considers four factors when ruling on a request for stay pending appeal:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

In re Revel AC, Inc., 802 F.3d 558, 568 (3d Cir. 2015) (quoting Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)).

To determine whether a stay pending appeal is warranted, the Court balances each of the factors and considers their relative strength. See id. at 568 (citing Brady v. Nat'l Football League, 640 F.3d 785, 789 (8th Cir. 2011)(citation omitted)).

Although a court considers all four factors, the United States Supreme Court has observed that the "most critical" factors are the first two: "whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm[.]" See id. (citing Nken v. Holder, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009), and Roland Mach. Co. v. Dresser Indus., 749 F.2d 380, 386 (7th Cir. 1984)).

Once a movant satisfies the first two factors, the traditional stay inquiry calls for an assessment of the remaining factors—i.e., the "harm to the opposing party and [the weight of] the public interest." Revel, at 659 (quoting Nken, 556 U.S. at 435).

As described in Revel, this "balancing" of the factors is as follows:

> We weigh the likely harm to the movant (absent a stay) (factor two) against the likely irreparable harm to the stay opponent(s) if the stay is granted (factor three). This is called the balancing of harms or balancing of equities. We also take into account where the public interest lies (factor four)—in effect, how a stay decision has "consequences beyond the immediate parties." Roland Mach., 749 F.2d at 388.

In re Revel AC, Inc., 802 F.3d at 569.

The Third Circuit Court of Appeals in Revel summarized the entire stay

pending appeal analysis as follows:

> To sum up, all four stay factors are interconnected, and thus the
> analysis should proceed as follows. Did the applicant make a
> sufficient showing that (a) it can win on the merits (significantly
> better than negligible but not greater than 50%) *and* (b) will suffer
> irreparable harm absent a stay? If it has, we "balance the relative
> harms considering all four factors using a 'sliding scale' approach.
> However, if the movant does not make the requisite showings on
> either of these [first] two factors, the [ ] inquiry into the balance of
> harms [and the public interest] is unnecessary, and the stay
> should be denied without further analysis." In re Forty–Eight
> Insulations [Inc., 115 F.3d 1294, 1300–01 (7th Cir. 1997)]
> (internal citation omitted). But depending on how strong a case the
> stay movant has on the merits, a stay is permissible even if the
> balance of harms and public interest weigh against holding a
> ruling in abeyance pending appeal.

In re Revel AC, Inc., 802 F.3d at 571.

With this standard in mind, the Court considers the merits of the Motion

to Stay Pending Appeal.

### a. **The Debtor's Likelihood of Success on Appeal**

As described in this Court's opinion in Park Restoration, LLC v. Summit

Twp. (In re Tr. of Conneaut Lake Park, Inc.), "caselaw is all over the map in

terms of the standard the Court is to use to determine what constitutes a

likelihood of success on appeal." Adv. No. 15-1010-JAD, 2016 WL 1467882, at

*3 (Bankr. W.D.Pa. Apr. 12, 2016).

Fortunately, the Third Circuit recently clarified the applicable standard,

writing that:

> For our Court, a sufficient degree of success for a strong showing
> exists if there is "a reasonable chance, or probability, of winning."

> Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223, 229 (3d
> Cir.2011) (en banc). Thus, while it "is not enough that the chance
> of success on the merits be 'better than negligible,' " Nken, 556
> U.S. at 434, 129 S.Ct. 1749 (citation omitted), the likelihood of
> winning on appeal need not be "more likely than not," Singer
> Mgmt. Consultants, 650 F.3d at 229; see also Wash. Metro. Area
> Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844
> (D.C.Cir.1977) (noting that the trouble with a "strict 'probability'
> requirement is [ ] it leads to an exaggeratedly refined analysis of
> the merits at an early stage in the litigation").

In re Revel AC, Inc., 802 F.3d at 568–69.

Thus, the relevant question is whether the Debtor has a "reasonable" chance or probability of succeeding on appeal. The Court answers this question in the negative.

As discussed above, the heart of the Debtor's challenge to the Court's granting of the Motion From Relief From Stay is his allegation that U.S. Bank does not have standing to enforce the Note and therefore, lacked standing to prosecute the Motion For Relief From Stay. U.S. Bank's standing to enforce the Note and related loan documents (i.e., the Mortgage) was also the question at issue in consolidated Adversary Proceeding 17-07028-JAD.

This Court rendered its decision in Adversary Proceeding 17-07028-JAD on September 25, 2019. This Court found that it lacked subject-matter jurisdiction to adjudicate the issue as the Stable Property was no longer property of the estate. However, the Court further found that if it did, in-fact, have subject-matter jurisdiction, that no question of material fact existed as to U.S. Bank's standing to enforce the relevant loan documents (i.e., the Note and Mortgage) and foreclose on the Stable Property. Accordingly, if the Court had subject-matter jurisdiction, it would award summary judgment to U.S. Bank.

As noted, consolidated Adversary Proceeding 17-07028-JAD was disposed of on motion for summary judgment by U.S. Bank. As the non-moving party, all facts were viewed and all inferences were drawn in the Debtor's favor.

To survive the motion for summary judgment, all the Debtor needed to show was that there was a genuine issue of material fact as to U.S. Bank's standing to enforce the Note and Mortgage. <u>See</u> September 25, 2019 *Memorandum Opinion* at pgs. 25-26. Whether a genuine issue of material fact existed was measured against the standard that "[i]ssues of fact are genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " September 25, 2019 *Memorandum Opinion* at pg. 26 (quoting <u>Hadeed v. Advanced Vascular Res. of Johnstown, LLC</u>, No. 3:15-CV-22, 2017 WL 4998663, at *4 (W.D. Pa. Oct. 30, 2017)(citation omitted)).

Even under this favorable standard, this Court found that no genuine issue of material fact existed as to U.S. Bank's standing to enforce the Note and Mortgage. In other words, that no reasonable jury could return a verdict for the Debtor on the issue of U.S. Bank's standing.

The logical implication of that finding in the matter *subj judice* is since the Court finds that no reasonable jury could return a verdict for the Debtor on the issue of U.S. Bank's standing to enforce the Note and Mortgage, the Debtor also has no "reasonable" chance of succeeding on the merits of his appeal challenging the same.

Thus, the Court finds that the Debtor has failed to show that he has a reasonable chance or probability on succeeding on appeal. Of course, this

analysis does not even consider whether the Debtor's appeal is moot in light of the Debtor's discharge and the bankruptcy trustee's abandonment of the Stable Property. That the appeal is moot is discussed further below in this Memorandum Opinion.

### b. <u>Whether the Debtor Will Suffer Irreparable Injury</u>

Turning to the second factor of the stay pending appeal analysis, "the applicant must 'demonstrate that irreparable injury is *likely* not merely possible in the absence of a stay.' " <u>Revel</u>, at 569 (italics in the original) (brackets omitted)(quoting <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). For this standard, "likely" means "more apt to occur than not." <u>Id</u>. at 569.

### i. **The Debtor Will Not Suffer an Irreparable Injury Because Even if He Succeeds on Appeal the Automatic Stay is Nonetheless <u>Terminated by Operation of 11 U.S.C. § 362(c)(1) and/or (2)</u>**

By his Motion to Stay Pending Appeal the Debtor seeks to stay the effectiveness of the Relief From Stay Order, whereby U.S. Bank was granted relief from the automatic stay afforded by section 362 of the U.S. Bankruptcy Code to enforce the mortgage lien against the Stable Property.

In short, section 362(a) of the Bankruptcy Code (11 U.S.C. § 362(a)), entitled "Automatic Stay," prohibits a party from taking actions to create, perfect, or enforce certain liens against property of the estate and/or property of the debtor as more particularly set forth in that section.[4]

---

[4] Section 362(a) of title 11 provides that:

(... continued)

The benefit of the "automatic stay" to the Debtor was that while it was in effect, U.S. Bank was prohibited from taking action to enforce the mortgage lien created by the Note and Mortgage. The Court's granting of relief from the automatic stay pursuant to section 362(d) freed U.S. Bank of section 362(a)'s enforcement restrictions.

In his Motion to Stay Pending Appeal, the Debtor argues that failure to

---

(... continued)

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

stay the effectiveness of the Relief From Stay Order will cause the Debtor to suffer irreparable harm inasmuch as U.S. Bank could potentially foreclose on the Stable Property prior to resolution of the Debtor's appeal. <u>See</u> Motion to Stay Pending Appeal at pgs. 5-6.

While this argument may have had merit when the Motion to Stay Pending Appeal was initially filed on June 15, 2017, subsequent events in the Debtor's bankruptcy case have eliminated any claim of irreparable injury that the Debtor may assert.

The ultimate goal of the Debtor's appeal of the Relief From Stay Order is to obtain a reversal of that order and the re-imposition of the automatic stay as to the Stable Property.  However, the Debtor's exemption of the Stable Property and the Chapter 7 Trustee's abandonment of the same, as well as the Debtor's recent chapter 7 discharge, have mooted any benefit of a reversal on appeal.

Under 11 U.S.C. § 362(c)(1), "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate[.]" Under § 362(c)(2), "the stay of any other act under subsection (a) of this section continues until the earliest of – (A) the time the case is closed; (B) the time the case is dismissed; or (C) *if the case is a case under chapter 7 of this title concerning an individual . . . the time a discharge is granted or denied*[.]" <u>See</u> 11 U.S.C. § 362(c)(2) (italics added).

In the matter *sub judice*, the Debtor exempted from property of the estate his entireties interest in the Stable Property. To the extent any portion of the Debtor's interest in the Stable Property was not exempted, such remaining

portion was abandoned by the Chapter 7 Trustee. <u>See</u> *Trustee's Notice of Intent to Abandon Property of the Estate*, ECF No. 534.  The effect of the Debtor's exemption and the Trustee's abandonment was to remove the Stable Property from property of the estate. <u>See</u> September 25, 2019 *Memorandum Opinion* at pg. 16. <u>See also</u> 11 U.S.C. § 522(b)(providing that an individual debtor may exempt certain property from property of the estate) <u>and</u> <u>In re Guterl Special Steel Corp.</u>, 316 B.R. 843, 861 (Bankr. W.D. Pa. 2004)(abandoned property "ceases to be property of the bankruptcy estate" and '[i]t reverts *nunc pro tunc* to the debtor or whoever had the possessory right to the property when the bankruptcy petition was filed, and stands as though no bankruptcy petition was ever filed.")(citing <u>Dewsnup v. Timm (In re Dewsnup)</u>, 908 F.2d 588, 590 (10th Cir. 1990), <u>aff'd</u> 502 U.S. 410 (1991)).

The Debtor also received his chapter 7 discharge on August 26, 2019 (ECF No. 614).

The significance of these events in the context of the Motion to Stay Pending Appeal analysis is that even if the Debtor is successful in getting the Relief From Stay Order reversed on appeal, the automatic stay would nonetheless be terminated by operation of 11 U.S.C. § 362(c)—either by the Debtor's exemption and the Chapter 7 Trustee's abandonment of the Stable Property (§ 362(c)(1)) or by the subsequent entry of discharge (§ 362(c)(2)). For this reason, the Court notes that the entirety of the Debtor's appeal of the Relief From Stay Order appears to be moot.

To that end, staying the effectiveness of the Relief From Stay Order

during the pendency of the appeal would have no net benefit to the Debtor because the stay is otherwise terminated under section 362(c)(1) and/or (2). In other words, there is no longer a section 362(a) stay in effect to be granted relief from so the effectiveness of an order granting relief from the automatic stay is of no moment.

Thus, any stay of the Relief From Stay Order affords the Debtor no benefit and refusal to stay the effectiveness of the Relief From Stay Order inflicts no irreparable harm upon the Debtor. Again, no matter the outcome of this Motion to Stay Pending Appeal or the appeal itself, the section 362(a) stay is terminated.

### ii. Enforcement of the Mortgage Lien by U.S. Bank Would Not Constitute an "Irreparable" Injury

Moreover, even setting aside the fact that a stay of the Relief From Stay Order would effectively be meaningless to the Debtor, the Debtor has failed to show that permitting U.S. Bank to enforce the mortgage lien would otherwise cause an irreparable injury.

> To establish irreparable harm, a stay movant "must demonstrate an injury that is neither remote nor speculative, but actual and imminent." Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir.1989) (internal quotation marks omitted). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (internal quotation marks omitted); see also [John Y. Gotanda, The Emerging Standards for Issuing Appellate Stays, 45 Baylor L.Rev. 809, 814 (1993)](defining "irreparable injury" as "the harm [ ] the movant will suffer during the pendency of the litigation that cannot be prevented or fully rectified by the tribunal's final decision").

In re Revel AC, Inc., 802 F.3d at 571.

In his Motion to Stay Pending Appeal, the Debtor states that "without reinstatement of the stay, the Debtor could be permanently injured by the movant action at foreclosure, by selling the property to a third party, or any other disposition." See Motion to Stay Pending Appeal at pg. 6.

While the Debtor identifies a potential foreclosure of the Stable Property as a source of irreparable injury, the Debtor does not expressly identify what that injury would be exactly. Is the "irreparable injury" to be suffered the loss of physical access to and use of the Stable Property, the loss of equity in the Stable Property, or something else?

In the first vein of argument, that the irreparable injury would be the loss of physical access to and use of the Stable Property as a residence, the Court questions how the loss of use of the Stable Property could harm the Debtor when the Debtor does not currently live there. Indeed, while the Debtor may identify the Stable Property as his residence, the reality of the situation is the Debtor is currently incarcerated in a federal facility in Ayer, Massachusetts (see Notice of Address Change, ECF No. 613) and that the Debtor will continue to be incarcerated for some time.[5] As such, any loss of the Stable Property will result in no immediate loss of shelter for the Debtor.

---

[5] Following the Debtor's May 29, 2015 guilty plea in his criminal proceedings, the Debtor was sentenced on certain counts to a period of 135 months, which is 11.25 years. See U.S. v. Scott, 877 F.3d 30, 35 (1st Cir. 2017). This sentence is to be served concurrently with a sentence of 120 months (10 years) on other counts. Id. It is unclear to this Court from what date those sentences are to run and if the Debtor was credited with any time served.

The Court is cognizant of the concept that "a man's house is his castle." But in this instance, the Debtor's "castle" is not one that he currently uses or requires for shelter, and general feelings of affinity or attachment to a particular property will not carry the day for establishing irreparable injury. Moreover, the Debtor has not demonstrated that other housing would not be available to him, whether public housing or otherwise.

Perhaps part of the Debtor's position is that his non-debtor spouse currently resides at the Stable Property. Afterall, if U.S. Bank were to foreclose on and sell the Stable Property, Mrs. James-Scott would be forced to relocate from the residence. (Again, nothing has been presented which indicates that Mrs. James-Scott could not obtain housing elsewhere.)

However, the automatic stay is not intended to protect the rights of non-debtor third parties like Mrs. James-Scott. See e.g. McCartney v. Integra Nat'l Bank North, 106 F.3d 506, 509-510 (3d Cir. 1997) ("Although the scope of the automatic stay is broad, the clear language of section 362(a) stays actions only against a 'debtor.' . . . As a consequence, 'it is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor.' " (internal citations omitted)). The Debtor cannot use the bankruptcy and appeal process to extend the protective umbrella of the automatic stay over Mrs. James-Scott.[6]

---

[6] In fact, the Debtor had previously filed an *Emergency Motion to Extend*
(... continued)

Turning to the second potential injury—a loss of equity—the short answer is that the Debtor has none to lose.

The Debtor lists the Stable Property in his "Schedule A/B: Property" (ECF No. 234) as having a value of $746,490. The Debtor further lists in his "Schedule D: Creditors Who Have Claims Secured by Property" the following entities as having secured claims against the Stable Property: (i) OCWEN Home Loans for $714,841.66, (ii) Direct Federal Credit Union for $255,000, and (iii) LBJ Trust for $250,000 (disputed). See ECF No. 234 at pgs. 20-22.[7] Additionally, the Debtor is subject to various tax claims and judgments. See Schedule E/F: Creditors Who Have Unsecured Claims, ECF No. 234, pgs. 25-31.

The consequence is that the value of the Stable Property is consumed by the Debtor's obligations and the Debtor has no equity in the Stable Property. Accordingly, the Debtor will not be economically injured by a loss of equity if U.S. Bank were to foreclose on the Stable Property. But, even if the Debtor did incur a financial loss, such monetary loss would not be "irreparable" because the loss could be rectified by a later money judgment in the unlikely event U.S.

---

(... continued)

*Protection of Automatic Stay* to his wife with respect to various tax issues. See ECF No. 17. That motion was denied by this Court for the reason that the stay does not extend to non-debtor parties and the Debtor failed to show any extraordinary circumstances to deviate from the general rule. See Transcript of March 8, 2017 Hr'g, ECF No. 261, pgs. 10-15.

[7] Additionally, the Debtor listed secured claims against the Stable Property by Bank of America for $1,750,000 and Zaniel Mamood et al for $195,000. Those liens were avoided by orders of this Court dated May 19, 2017. See ECF Nos. 176 & 178.

Bank's foreclosure would be found to be unlawful. As noted in <u>Revel</u>, "a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement[.]" <u>See</u> <u>Revel</u>, at 572 (quoting <u>Minard Run Oil Co. v. U.S. Forest Serv.</u>, 670 F.3d 236, 255 (3d Cir. 2011)).

Not to be lost in this analysis, however, is the overarching fact that in challenging U.S. Bank's standing to enforce the Note and Mortgage, the Debtor is not arguing that the underlying documents (i.e. the Note and Mortgage) are themselves invalid. The Debtor is merely arguing that U.S. Bank is the wrong party to enforce them. As such, the mortgage lien created by the Note and Mortgage will not be voided by a reversal of the Relief From Stay Order and will continue to encumber the Stable Property.

A central component of the Debtor's argument on appeal is that the Note is lost and U.S. Bank, as a downstream assignee, cannot enforce it under prevailing Massachusetts caselaw and the Massachusetts Uniform Commercial Code.

As discussed in the September 25, 2019 *Memorandum Opinion*, in order to enforce a lost note a party must show that it was in possession of the note and entitled to enforce at the time of the note's loss or, alternatively, is acting as an agent of the party who had enforcement powers. <u>See</u> September 25, 2019 *Memorandum Opinion* at pgs. 38-41, <u>see also</u> <u>In re Desmond v. Raymond C. Green, Inc. (In re Harborhouse of Gloucester, LLC)</u>, 505 B.R. 365 (Bankr. D. Mass. 2014), <u>and</u> <u>Eaton v. Fed. Nat'l Mortg. Ass'n</u>, 969 N.E.2d 1118, 1121 (Mass. 2012).

A primary reason for the possession-at-time-of-loss rules is for the protection of the maker of the note. Specifically, the rule protects a maker from sustaining multiple losses on the same note. See Harbourhouse, at 372; see also Mass. Gen. Laws ch. 106 § 3-309(b). This situation would arise where a maker incurs a loss due to an enforcement action by a party later determined to not be the party entitled to enforce the note, and then again in a subsequent action by the correct party.

Thus, at one point the Debtor could have argued that failure to stay the Relief From Stay Order could subject the Debtor to losses attributable to multiple enforcement actions. However, that is not the case anymore.

As explained in the September 25, 2019 *Memorandum Opinion*, the Debtor's recent chapter 7 discharge will limit recovery on the Note and Mortgage to *in rem* relief as all *in personam* liability is discharged. What this means is that a mortgagee's enforcement rights are limited to foreclosure on the Stable Property itself and no money judgment stemming from the Note can be assessed against the Debtor. Thus, if the Debtor is right that U.S. Bank is not the correct party to enforce (which this Court has found not to be the case), the Debtor will not be later accountable on the Note.

As such, the Debtor will not be irreparably injured by U.S. Bank's enforcement of the mortgage lien.  This is true whether or not U.S. Bank is the correct party to enforce the mortgage lien.

Accordingly, for the reasons discussed above, the Debtor has failed to show that he will be irreparably injured if this Court declines to stay the Relief

18

From Stay Order.

### c. **Whether the Harm to U.S. Bank and the Interests of the Public Weigh In Favor of Granting a Stay of the Relief From Stay Order**

Revisiting the standard discussed above, both of the first two factors—reasonable likelihood of success of appeal and likelihood of irreparable injury—are necessary for the granting of a stay pending appeal. See Revel, at 571 ("However, if the movant does not make the requisite showings on either of these [first] two factors, the [ ] inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis.")(quoting In re Forty–Eight Insulations, Inc., 115 F.3d at 1300–01 (internal citation omitted)(alterations in the original)). Thus, it is not enough that the Debtor show one or the other, as he must show both.[8]

In the matter *sub judice*, the Court finds that the Debtor has failed to satisfy either of these first two requirements. Accordingly, no analysis of the remaining factors is necessary and the Motion to Stay Pending Appeal should be denied. However, in the interest of completeness the Court will examine the third and fourth factors.

### i. **The Harm to U.S. Bank if Stay is Granted**

The evidence of record in this case is that the Debtor has failed to remit

---

[8] Although both of the first two factors are required to warrant stay pending appeal, it has been suggested that the first factor (likelihood of success of appeal) is more important. As observed in Revel, "Judge Posner has remarked, it isn't enough that the failure to obtain a stay will be 'a disaster' for the stay movant but only a 'minor inconvenience to the defendant,' as '[e]quity jurisdiction exists only to remedy legal wrongs; [thus,] without some showing of a probable right[,] there is no basis for invoking it.' " Revel, at 568 (quoting Roland Mach. Co., 749 F.2d at 386)(alteration in the original).

payments on the mortgage loan since May 2014. <u>See</u> Motion For Relief From Stay at ¶ 9. <u>See also</u> Transcript of June 2, 2017 Hr'g at pg. 12 (the Debtor represented that the last payment tendered on the mortgage loan was in 2014, prior to his incarceration).  As such, U.S. Bank has received no payments on the mortgage loan for over five (5) years.

In addition to the principal, interest, and late charges owed on the mortgage loan, U.S. Bank also appears to be advancing other costs attendant to the Debtor's home ownership. Pursuant to the Motion For Relief From Stay, $42,928.35 was due to U.S. Bank as of March 27, 2017 for escrow advances. <u>See</u> Motion For Relief From Stay at ¶ 7.  Although not itemized in the Motion For Relief From Stay, the Court notes that escrow charges typically include insurance fees and/or real estate taxes. Presumably such fees and taxes continue to accrue.

Consequently, the Debtor and his wife have had the benefit of Mrs. James-Scott residing at the Stable Property virtually free of charge for over five years and there is no indication that the Debtor will suddenly begin to make payments during the pendency of the appeal.

Accordingly, the harm to U.S. Bank if the Motion to Stay Pending Appeal is granted is that U.S. Bank will continue to receive no payment on the mortgage loan, while continuing to make escrow-related advances. In a sense, U.S. Bank will be forced to subsidize the lifestyle expenses of the Debtor and Mrs. James-Scott.

This harm is made more egregious by the fact that any recoupment of

monetary damages will be capped at the foreclosure sale value of the Stable Property. As discussed above, due to the Debtor's and Mrs. James-Scott's bankruptcy discharges, no money judgment can be obtained against them personally on the Note. Thus, to the extent that the money damages incurred by U.S. Bank exceed the Stable Property's value, U.S. Bank will be unable recover those losses at a later time.

For these reasons, the Court finds that the "balance of harms" weighs in favor of denying the Motion to Stay Pending Appeal.

### iii.   **The Weight of Public Interest**

This case concerns a contract for the lending of money between two parties. Beyond the ramifications to U.S. Bank and the Scotts, whether or not a stay will be granted does not appear to immediately affect the public, in that a foreclosure on the Stable Property will not shutter a business or terminate the employment of other members of the public. See Revel, at 571-573.

As such, the public interest in this case concerns the correct application of property laws, as well as bankruptcy laws. See Revel, at 573 (" . . . the public has a stake in protecting the rights of tenants in commercial properties. Furthermore, public policy strongly favors the correct application of the Bankruptcy Code, especially where property rights are at stake.")

As discussed above, the purpose of the Commonwealth of Massachusetts's possession-at-time-of-loss laws is to protect the note maker from injuries from multiple enforcement actions. However, here the Debtor is protected from this exact injury by operation of his bankruptcy discharge. In

fact, it is only U.S. Bank who is in any danger of facing subsequent suit from any other party asserting that it is the true party entitled to enforce the Note.

With respect to the correct application of the Bankruptcy Code, it is certainly true that the public has an interest in ensuring that relief from the automatic stay is granted only under the permissible circumstances set forth in the Code. It is also true, however, that the public has an interest in judicial economy and the correct application of all provisions of the Bankruptcy Code.

In the case *sub judice*, the correct application of the Bankruptcy Code is that the automatic stay is terminated by operation of section 362(c) and there is no automatic stay from which to be granted relief. Thus, this Motion to Stay Pending Appeal, as well as the appeal itself, appears to be moot.

If this Court were to grant a stay of the Relief From Stay Order pending appeal even though the automatic stay is otherwise terminated, it could cause further litigation as to the overall effect of the stay in other courts. As such, the interests of judicial economy and the Bankruptcy Code favor the denial of stay.

Thus, at best, the Court considers the fourth factor (weight of public interest) to be in favor of denying the request for stay pending appeal.

WHEREFORE, for the reasons set forth above, an order shall be entered that denies the *Motion to Stay Execution of Order Lifting Automatic Stay On 40 Old Stable Drive Mansfield MA 02048 Pending the Outcome of Petitioner['s Appeal* (ECF No. 231).

Date: September 30, 2019

_____
Jeffery A. Deller
United States Bankruptcy Judge

jlh

FILED
9/30/19 2:29 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

cc:     Mr. Michael David Scott, *Pro Se*
        Brett L. Messinger, Esq.
        James R. Walsh, Esq., Chapter 7 Trustee
        United States Trustee